## WESTERN UNION TEL. CO. v. COOK et al.

(Circuit Court of Appeals, Ninth Circuit. April 2, 1894.)

No. 128.

1. FEDERAL COURTS—FOLLOWING STATE DECISIONS.

The question as to the validity of contracts exempting telegraph companies from liability for mistakes, delays, or nondelivery in the transmission of messages, unless they are repeated, is one of general law, as to which federal courts are not bound (Rev. St. § 721) to follow state decisions.

---

[1] No opinion filed in case cited.

2. TELEGRAPH COMPANIES—MISTAKES IN TELEGRAMS—CONTRACT LIMITING LIA-
BILITY—PUBLIC POLICY—BURDEN OF PROOF.

In California, telegraph companies are not common carriers (Civ. Code, § 2168), but they are required to exercise "great care and diligence" in the transmission and delivery of messages (section 2162). *Held*, that a contract exempting the company from liability beyond the sum paid for transmission, unless the message is repeated, is void, as against public policy, in so far as it would relieve the company from liability for want of the degree of care and diligence required by the statute; and therefore, in case of mistake, the burden is on the company to show that there was no want of such care and diligence. Hart v. Telegraph Co., 6 Pac. 637, 66 Cal. 579, disapproved.

3. SAME—DEGREE OF CARE—EVIDENCE.

Evidence that the receipt and transmission of messages were intrusted to a man whose only experience in telegraphy was gained 30 years previously, when he was employed upon a telegraph line for three years in some capacity, not stated, is insufficient to show that the company exercised great care and diligence, and is strong evidence of gross negligence.

In Error to the Circuit Court of the United States for the Northern District of California.

This was an action by Joseph E. Cook and L. E. Langley, partners under the firm name of Cook & Langley, against the Western Union Telegraph Company, to recover damages occasioned by mistake in the transmission of a telegram. In the circuit court the jury returned a verdict for plaintiff, and judgment was entered accordingly. Defendant brings the case here on writ of error.

Geo. H. Fearons and R. B. Carpenter (P. G. Galpin, of counsel), for plaintiff in error.

Joseph D. Redding (W. H. L. Barnes, of counsel), for defendants in error.

Before GILBERT, Circuit Judge, and ROSS and HANFORD, District Judges.

ROSS, District Judge. On July 28, 1891, the defendant in error delivered for transmission to the plaintiff in error, at its San Francisco office, the following telegram: "C. W. Gammon, Walnut Grove: Don't buy any more pears. Selling east one twenty-five." The message was sent by the company's main line to Sacramento, and from there, by a branch wire, to Walnut Grove, which is a station on the Sacramento river, in Sacramento county. The message was promptly transmitted and delivered as written, except that the word "pears" was changed to the word "peaches." For the transmission and delivery of the telegram, the defendants in error paid, and the company received, 25 cents; and acting upon the telegram, as delivered to him, Gammon, who was an employe of the defendants in error engaged in buying fruits, continued to buy pears, to the amount of 4,968 boxes, upon which the proof showed defendants in error lost $4,513.60, for which they recovered a verdict in the court below, upon which, with costs, a judgment was entered against the company. The case is brought here by writ of error, and the only questions presented for consideration relate to the action of the trial court in giving and refusing to give certain instructions to the jury.

The evidence showed that the telegram in question·was written by the defendants in error upon a printed form prepared by the company, which contained the following terms and conditions, among others:

"To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this, one-half the regular rate is charged in addition. It is agreed between the sender of the following message and this company that said company shall not be liable for mistakes or delays in the transmission and delivery, or for nondelivery, of any unrepeated message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for nondelivery, of any unrepeated message, beyond fifty times the sum received for sending the same, unless specially insured; nor, in any case, for delays arising from unavoidable interruption in the working of its lines, or for errors in cipher or obscure messages. * * *"

The court below instructed the jury:

"If you further believe from the evidence that the plaintiffs, at the time of signing and sending of said dispatch, knew, or had ample means of knowing, the terms printed on said dispatch, and agreed to said terms, and the message in question was not directed by the plaintiffs to be repeated, and the defendant used suitable instruments and machines, employed skillful operators, who, in the transmission of said message, used ordinary care and diligence, and were not guilty of any actual or willful negligence in the premises, then the plaintiffs cannot recover anything beyond the price paid for the message, and interest thereon. If, on the other hand, you believe from the evidence that the mistake made in this dispatch was due to the gross negligence of the defendant, either in not providing suitable instruments and lines, and competent operators, or to the gross negligence of the operator who sent the dispatch, or who received it at Walnut Grove, which shows a want of the care required by law, and that that negligence was gross, then the plaintiffs may have a verdict for the amount of damages actually sustained by them,—the amount which I have already given. If you believe from the evidence that the plaintiffs have shown that they paid for, and sent by the lines of the defendant corporation, a message which was delivered by the agent of the defendant to the agent of the plaintiffs at Walnut Grove, and which telegram, when delivered, was not in the words given to the defendant, and paid for, to be sent, and if you further believe from the evidence that thereby the plaintiffs have suffered loss, then the burden of proof is on the defendant to show that it was not guilty of willful misconduct or gross negligence in sending and delivering said telegram as it did. And if the jury believe from the evidence that the defendant has not shown that it was not guilty of such conduct or such negligence, in the transmission and delivery of such message, then the jury must find a verdict in favor of the plaintiffs for the amount of the loss which the evidence shows the plaintiffs have sustained in the premises."

By the last instruction quoted, the jury was told, in substance, that the delivery of the telegram in its altered form threw the burden upon the company of proving that the mistake was not occasioned by its willful misconduct or gross negligence, in order to prevent a recovery by the then plaintiffs of the damages actually sustained by them. Undoubtedly, proof of the delivery of the telegram in a form different from that in which it was sent was prima facie proof of negligence. Rittenhouse v. Telegraph Line, 44 N. Y. 263; Baldwin v. Telegraph Co., 45 N. Y. 744; Bartlett v. Telegraph Co., 62 Me. 209; Telegraph Co. v. Carew, 15 Mich. 525; Telegraph Co. v. Tyler, 74 Ill. 168; Sweatland v. Telegraph Co., 27 Iowa, 433;

Telegraph Co. v. Gildersleve, 29 Md. 232; Telegraph Co. v. Crall, 38 Kan. 679, 17 Pac. 309; Telegraph Co. v. Griswold, 37 Ohio St. 301; Candee v. Telegraph Co., 34 Wis. 471; La Grange v. Telegraph Co., 25 La. Ann. 383; Telegraph Co. v. Fontaine, 58 Ga. 433; Shear. & R. Neg. (4th Ed.) §§ 542, 556; 2 Thomp. Neg. pp. 841–843. And, but for the stipulation in respect to the repetition of the message, proof of its delivery in the altered form would have thrown upon the company the burden of showing that the mistake was not occasioned by any fault or negligence on its part, or on the part of any of its agents, in order to escape responsibility for the actual damages caused by the mistake. But it is just as clear, we think, that if the stipulation limiting the responsibility of the company, unless the message be repeated, to the amount paid for sending it, be valid to any extent, and the presumption of negligence raised by proof of the delivery of the telegram in its changed form be overcome by proof on the part of the company that it exercised the requisite degree of care and diligence in the transmission and delivery of the telegram, the burden would then be cast on the party seeking to recover the actual damages sustained to prove the facts upon which the company's additional liability arises. It is important, therefore, to inquire as to the validity of the stipulation purporting to limit the liability of the company to the amount paid for sending the telegram, unless the sender directs, and pays for, its repetition. In California, it is declared by statute that a telegraph company is not a common carrier, and the degree of care and diligence exacted of such a company is "great care and diligence." Section 2162 of the Civil Code of California provides:

"A carrier of messages for reward must use great care and diligence in the transmission and delivery of messages."

And section 2168 of the same Code is as follows:

"Every person who offers to the public to carry persons, property, or messages, excepting only telegraph messages, is a common carrier of whatever he thus offers to carry."

After referring to these provisions of the state statute, the supreme court of California, in the case of Hart v. Telegraph Co., 66 Cal. 579, 6 Pac. 637, said:

"If great care and diligence—which terms, of course, include the employment of proper instruments and competent operators—be exercised by the company in the transmission and delivery of a message, the degree of care prescribed by the statute is complied with."

The court further held in that case that a similar stipulation to that involved in the present case is a reasonable precaution to be taken by the company, and binding upon all who assent to it, so as to exempt the company from liability beyond the amount stipulated, for any cause except willful misconduct or gross negligence on the part of the company, and, further, that, in an action to recover damages beyond the amount stipulated, the burden of proof is on the plaintiff to show such willful misconduct or gross negligence.

It is contended on the part of the plaintiff in error that in the present case this court is bound to follow the ruling of the highest court of California in these respects. It is declared by section 721 of the Revised Statutes that:

"The laws of the several states, except where the constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States in cases where they apply."

This statute has been many times under consideration by the supreme court. One of the latest cases in which it was discussed is Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, in which many of the earlier cases are referred to. The rule is that if the matter in question be one of general law, unaffected by statute, the federal courts, while leaning towards an agreement with the state courts, must exercise an independent judgment. If of local law, the decisions of the highest court of the state in which the question arises will be followed, without regard to the views of the federal court. No one questions that this is so to the extent that the rights of the parties to this suit depend upon the provisions of the state statute cited, and the effect to be attributed to them. It is said, however, for the defendants in error, that the statute of California in no respect fixes the measure of liability, or where the burden of proof rests. It is true it is silent in respect to the burden of proof, but it does declare that telegraph companies are not common carriers, and further fixes the degree of care that they shall exercise as "great care and diligence." This is obviously the measure of their liability under that statute. Every telegraph company that operates within the limits of the state of California does so without the liabilities imposed by law upon common carriers, for the statute of the state says, in effect, that such companies shall not be here so regarded, but is liable for "great care and diligence" in the transmission and delivery of messages, for the same reason, namely, because the state statute so declares.

The words "great care and diligence" the supreme court of the state said in Hart v. Telegraph Co., supra, "of course, include the employment of proper instruments and competent operators;" and the court there further decided that, if great care and diligence "be exercised by the company in the transmission and delivery of a message, the degree of care prescribed by the statute is complied with." The meaning and effect of that statute, as declared by the highest court of the state, is, by force of section 721 of the Revised Statutes, and upon well-settled principles, binding upon this court; but not so upon points depending upon general principles of law, within which category comes the question as to the validity of the contract exempting the company from liability beyond the amount paid for the telegram unless the sender orders, and pays for, its repetition. In the decisions of the courts of the various states there is much conflict upon that question, some holding that such a stipulation is without consideration, and also void because against public policy; others, that, while not altogether invalid, it ought not to be held to exonerate the company from

damages caused by defective instruments, or a want of skill or ordinary care on the part of its operators; and others, still, that it is a reasonable precaution, and binding upon all who assent to it, so as to exempt the company from liability beyond the amount stipulated for any cause except willful misconduct or gross negligence on the part of the company. Many of the cases will be found referred to in Hart v. Telegraph Co., *supra*, and in notes to the cases of White v. Telegraph Co., 14 Fed. 718, and Telegraph Co. v. Blanchard, 45 Am. Rep. 486.

As respects the question of consideration, we agree with the supreme court of California, in the Hart Case, that "it is enough to say that, if the stipulation is one that can be made, it is a part of the contract, and is supported by the same consideration that supports the contract for the transmission of the message." But, in regard to the extent that such a stipulation contravenes reason and public policy, there is, as has been said, much conflict in the decisions of the courts of the country. No decision that has come under our observation holds that the right of a telegraph company to contract for the limitation of its liability is without limit; and we are of opinion, after mature consideration, that it would be against reason and public policy to hold that it is permissible for such a company to stipulate for immunity from liability for a failure to exercise the care and diligence that the statute under which it operates declares it shall exercise. That being, in the present case, "great care and diligence," the failure on the part of the plaintiff in error to exercise that degree of care and diligence would render it liable for the damages sustained by the sender, notwithstanding the stipulation in question. There is certainly no hardship, but much sound reason, in requiring a telegraph company to exercise great care and diligence in the transmission and delivery of messages which it contracts to transmit and deliver, and for which it is paid. At the same time the nature of the employment is so peculiar, the risks attending it so extraordinary, that it is not unreasonable to uphold such stipulations, to the extent of limiting the liability of the company for losses not occasioned by its want of the care and diligence exacted by the law under which it operates.

If these views be correct,—and we are of opinion that they embody the true logic and sense of the question,—it is quite manifest that the instructions given to the jury by the trial court were more favorable to the plaintiff in error than they should have been, and hence it has no good ground of complaint; for the court first instructed the jury, in substance, that if the company used suitable instruments, and employed skillful operators, who, in the transmission of the message, used ordinary care and diligence, and were not guilty of any actual or willful negligence, the plaintiffs could not recover anything beyond the price paid for the message, and interest thereon.

Next, and on the other hand, if the mistake was due to the gross negligence of the company, "either in not providing suitable instruments and lines, and competent operators, or to the gross negli-

gence of the operator who sent the dispatch, or who received it at Walnut Grove, which shows a want of the care required by law, and that the negligence was gross," the plaintiffs may recover the actual damages sustained by them. And then, that the delivery of the telegram, in its altered form, threw the burden of proof on the company to show that it was not guilty of willful misconduct or gross negligence in sending and delivering it, in order to exonerate it from the damages actually sustained by the plaintiffs. Proof of the delivery of the telegram in its altered form threw upon the company the burden of showing that it had exercised the degree of care and diligence required of it by the law under which it was operating; that is to say, great care and diligence. The instruction regarding the burden of proof was therefore more favorable to the company than it should have been. And, by the first and second instructions referred to, the jury was told that a less degree of care and diligence than is required of the company by the law under which it operated would relieve it of the liability for the damages actually sustained by the plaintiffs. Of this, also, the company has no just cause of complaint. It also results from what has been said that the court below did not err in refusing to instruct the jury to return a verdict for the plaintiff for the sum of 25 cents, with interest thereon from the date of its payment to the company by the plaintiffs. The complaint alleged that the damages suffered by the plaintiffs occurred "through the error and gross negligence" of the defendant company. The latter denied, by its answer, any negligence on its part, and averred that it used great care and diligence in the transmission of the message, and that the mistake was not caused by the incapacity or negligence of any of its operators or agents, but in some way or manner unknown to the company.

The evidence strongly tended to show, not only that the company did not use great care in the transmission of the message, but was grossly negligent, in that it had not a competent operator at Walnut Grove,—the place to which the telegram in question was sent. Its agent there was a Mr. Brown, who was a merchant and rancher, but who knew nothing about telegraphy, and who could neither send nor receive a message. Into his store the wires of the company were carried, and there was its office. In Brown's employ, as clerk and general utility man, was a Mr. Barrett, who, 30 years before, had been employed by a telegraph company operating lines between Boston and Halifax. To this man the duties of telegraph operator at Walnut Grove were deputed by Brown, with the consent of the defendant company. Between the time of Barrett's employment in Massachusetts, and his undertaking the duties of operator at Walnut Grove, he had no experience in, or connection with, the business of telegraphy. Barrett was a witness on the trial, and when asked by counsel for the company the question, "How long have you been engaged in the telegraph business?" answered, "It covers a space of 36 years." On cross-examination this witness admitted that he had had no connec-

tion with the business of telegraphy for more than 30 years, at the time he was employed as operator at Walnut Grove, and that his former connection with that business covered a period of about three years, during which time he was employed in some capacity, not stated, on a line between Boston and Halifax. The evidence of the employment of such a man to transmit messages intrusted to a telegraph company not only fails to show the exercise of great care, but is strong evidence of gross negligence, on its part.

We discover no error in the record prejudicial to the plaintiff in error, and the judgment is accordingly affirmed.