POSTAL TELEGRAPH CABLE CO. v. NICHOLS et al.*

(Circuit Court of Appeals, Ninth Circuit. February 3, 1908.)

No. 1,379.

1. TELEGRAPHS—MESSAGES—DELAY IN TRANSMISSION—CONTRACT.

Where plaintiffs wrote a message on a blank reciting that the message was received by the telegraph company subject to the terms and conditions on the back of the blank, which were agreed to, plaintiffs were charged with notice of such conditions, though they were not read and plaintiffs' attention was not called to them.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Telegraphs and Telephones, § 45.]

*Rehearing denied June 10, 1908.

**2. SAME—NEGLIGENCE.**

Plaintiffs, before sending a telegram from Tacoma to Alaska with reference to a proposal for a government contract, explained the importance of the message to the manager of the sending office, and he, after satisfying himself of his ability to transmit it promptly, undertook to do so. Within 10 or 15 minutes after starting the message such agent knew that the transmission would be interrupted, and, though he knew that it was essential that it be delivered before noon of the succeeding day in order to be of avail, did not notify the senders of such interruption, and the message was not delivered until eight days thereafter. If notice of the interruption had been given, the senders might have protected themselves by communicating with the War Department at Washington, which was known to the agent at the sending office. *Held*, that the telegraph company was negligent in failing to notify the senders of the interruption, against which it could not contract for immunity from liability.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Telegraphs and Telephones, § 39.

Delay in transmission of message—failure to disclose that line was not in working order, see note to Pacific Postal Telegraph Cable Co. v. Fleischner, 14 C. C. A. 177.]

**3. SAME—DAMAGES.**

Where plaintiffs, discovering a mistake in certain proposals for government work, telegraphed the government officer in charge of the bids to add 5 per cent. to their proposal, but such message was not received in time because of the telegraph company's negligence, and plaintiffs were compelled to do the work at the original price, and the government officers would have added the 5 per cent. if the telegram had been received prior to the opening of the bids, the telegraph company was liable for such additional amount.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Telegraphs and Telephones, §§ 64–68.]

**4. SAME—NOTICE OF CLAIM.**

Where a telegram was filed for transmission on June 12, 1903, but the senders had no knowledge, prior to July 11th following, of the telegraph company's negligent failure to deliver the same, and notice of claim for damages was filed on August 17, 1903, the claim was in time, under a rule requiring claims for damages to be presented within 60 days after the message is filed for transmission.

In Error to the Circuit Court of the United States for the Western Division of the Western District of Washington.

Robert H. Lindsay and W. S. Wood, for plaintiff in error.

A. R. Titlow, for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and HUNT, District Judge.

ROSS, Circuit Judge. On and prior to the 12th day of June, 1903, the defendants in error, who were the plaintiffs in the court below, were general contractors, having their offices in the same building in the city of Tacoma, state of Washington, in which the plaintiff in error had its telegraph office, and had, prior to the date mentioned, submitted a proposal in writing to do certain work for the government in Alaska, at a place called Haines, which proposal was made in response to an advertisement inviting bids, and wherein it was stated that all such bids would be opened by the constructing officer, Capt. W. P. Richardson, at Skagway, at noon of the 13th day of June, 1903. By their proposal, sent to Capt. Richard-

son in sufficient time, the defendants in error offered to complete the work for $48,870, and they gave security, as required by the War Department, that if such proposal was accepted they would enter into a contract to do the work accordingly. Subsequently finding that they had made some mistake, they undertook on the 12th day of June, 1903, to telegraph Capt. Richardson at Skagway to add 5 per cent. to their proposal, which addition amounted to $2,443.50. They were accustomed to the use of the telegraph in their business operations, and were regular customers of the plaintiff in error. They kept in their office a book of telegraph blanks so arranged that a carbon copy of any message written thereon could be preserved. Upon one of these blanks the defendants in error wrote, on the 12th day of June, 1903, a message in these words:

"Tacoma, Wash., June 12, 1903.

"Capt. W. P. Richardson, Skagway, Alaska.

"Proposal for Haines mailed last Monday. Add 5% to our entire proposal.
"W. R. Nichols & Co."

Nichols took this message to the office of the plaintiff in error, and, according to his testimony given on the trial, explained to its manager at Tacoma, Mr. Bell, the importance of the telegram, and stated to him that, if it could not be delivered to Capt. Richardson at Skagway before 11 o'clock of the next day, they could wire to the War Department at Washington such addition to their bid, and thus protect themselves from loss. The testimony of Nichols in respect to the manager's answer to this inquiry is that he first said:

" 'Yes, sir,' and then he says, 'Wait.' He then went back to the operating table behind the counter. I was in front of the counter. He went back to the tables, and after awhile he came out, and he says: 'Yes; we can deliver it, and probably it will be delivered to-night. Yes; the wires are all right'— or: 'The wires are working. We can deliver it at that time, and probably it will be delivered to-night.' "

In regard to the same matter the agent of the telegraph company testified upon question and answer as follows:

"Q. Do you remember the incident on the 12th day of June, 1903, of Mr. Nichols having a conversation with you relative to the sending of a telegram to Skagway for the firm of Nichols & Co.? A. Yes. Q. Just state, if you please, what transpired between you and Mr. Nichols on that occasion. A. Well, I couldn't state just exactly what transpired, because I have those things every day; but I think Mr. Nichols came in and said he wanted to send an important telegram to Skagway, and asked me if I could get it through. I don't know what I remarked; but I went back and looked at the wire service—we get wire services which state whether or not the wires are down—and I saw nothing there to indicate that the wires were down, and I told him, I presume, that I could get it through. Q. Explain to the jury what those wire services are. A. They are notices of the condition— if at any time during the day a wire goes down on our system, for instance, the wire goes down between Seattle and Tacoma, we are notified, or any break of that kind, we receive a notification that the wires are down. Q. What do you do with that notification? A. That is placed on a spindle for the information of the employés, for reference. Q. Upon this inquiry made of you by Mr. Nichols, you consulted your wire services? A. Yes. Q. What was your wire service? A. I found I had no notice that the wire was down, and I came out and told him I thought I could get the message through."

The message was thereupon given to the telegraph company for delivery at Skagway, for which the defendants paid the usual charge, but not for the repetition of the message; the route being, as described by one of the employés of the plaintiff in error, from "Tacoma to Seattle over our own line; from Seattle to international boundary between the United States and Canada over our own line, where the metallic connection is made with the Canadian Pacific wire to their Vancouver office; there it comes actually into the hands of the Canadian Pacific government and department; from Vancouver to Ashcroft over the Canadian Pacific lines, and from Ashcroft to White Horse, Yukon Territory, through British Columbia and a part of the Yukon Territory, over lines owned and operated by the Dominion government of Canada; from White Horse, Yukon, to Skagway, over the lines of the White Horse & Yukon Railway Company."

The case further shows that the message was immediately started from Tacoma, and reached Seattle 18 minutes after 4 o'clock of the afternoon of June 12th. It did not reach Capt. Richardson until June 20th, "owing to the Dominion telegraph line being down," according to a statement made in a letter from that officer, of date July 9, 1903, to the defendants in error. There was evidence going to show that, if the telegram had been delivered before noon of June 13th, the additional 5 per cent. would have been added to the bid of the defendants in error, and that because of such nondelivery they were obliged to take the contract and do the work for the amount of their original proposal, resulting in a loss to them of $2,443.50. The case further shows that on June 12th there were two lines of telegraph open between Tacoma and the city of Washington, by means of which the defendants in error could have communicated with the War Department; and it also shows that they were not notified by the plaintiff in error of its inability to get the telegram through to its destination, although it knew, according to the testimony of Bell, within 10 or 15 minutes after the message was started, that the connecting wires were down and its transmission interrupted.

These further facts appear in the case: On the plaintiff in error's blank, on which the message in question was written, and above the space designed for its insertion, were printed the words:

"Send the following message, without repeating, subject to the terms and conditions on the back hereof, which are hereby agreed to."

And on its back were printed these, among other, "terms and conditions":

"It is agreed between the sender of the message written on the face hereof and the Postal Telegraph Cable Company that said company shall not be liable for mistakes or delays in the transmission or delivery, or for the nondelivery of any unrepeated message, beyond the amount received for sending the same. And this company is hereby made the agent of the sender, without liability, to forward any message over the lines of any other company when necessary to reach its destination. This company will not be liable for damages or statutory penalties in any case where the claim is not presented in

writing within 60 days after the message is filed with the company for transmission. No employé of this company is authorized to vary the foregoing."

The message was not repeated, the delay occurred upon a connecting line, and no claim for damages was presented in writing within 60 days after the message was filed with the company for transmission. We attach no consequence to the testimony of Nichols to the effect that he did not read the printed matter on the front or back of the blank upon which he wrote the message and that his attention was not called to such matter. In the case of Primrose v. Western Union Telegraph Company, 154 U. S. 1, 14 Sup. Ct. 1098, 38 L. Ed. 883, the Supreme Court held that the measure of damages for mistakes made in the transmission of an unrepeated telegram in cipher, written upon one of the company's blanks upon which were printed terms and conditions similar to those appearing in the present case, was the sum paid for sending it, where the telegraph company was not informed of the nature or importance of the message.

But this case presents two very important distinctions: Here the telegraph company was distinctly informed of the importance of the message and that it was essential that it be delivered at Skagway before noon of June 13th, and with that knowledge accepted and undertook so to transmit and deliver the message, after satisfying itself of its ability to do so. Here, too, the telegraph company became aware, within 10 or 15 minutes after starting the message, of a break in the line over which it knew, or should have known, it must go, and that its transmission had been interrupted. With that knowledge on its part, and knowing the importance of the message, and that it was essential that it be delivered before noon of the next day in order to be of any avail to the senders, we have no hesitation in holding it to have been gross neglect on its part, against which it could not contract, not to notify the senders of the break in the line and the consequent interruption in the transmission of the message, that they might have protected themselves by communicating directly with the War Department at Washington. See Fleischner v. Pacific Postal Telegraph Company (C. C.) 55 Fed. 738; Swan v. Western Union Telegraph Company, 129 Fed. 318, 63 C. C. A. 550, 67 L. R. A. 153; Western Union Telegraph Company v. Cook, 61 Fed. 624, 9 C. C. A. 680.

We are also of opinion that the damages sued for, and which the defendants in error recovered in the court below, were not speculative or remote, as they covered only the 5 per cent. desired by the defendants in error to be added to their bid, and which the officers of the government having in charge the work in question testified would have been added, had the telegram been delivered prior to the opening of the bids, at noon of the 13th of June, 1903.

The contention on the part of the plaintiff in error that the action cannot be maintained because of the failure of the defendants in error to present their claim for damages within the 60 days required by the rules of the plaintiff in error cannot be sustained upon the record. It appears that the claim for damages was presented to the plaintiff

in error on the 17th day of August, 1903. There was testimony on the part of the defendants in error to the effect that they did not know of the nondelivery of the telegram to Capt. Richardson prior to July 11, 1903, which was much within the 60-day period. Counsel for the plaintiff in error are mistaken in saying, as they do in their brief, that the record shows that the defendants in error knew of such nondelivery on the 17th of June of that year. Neither the testimony of the witness Titlow, nor the letter of Capt. Richardson to the defendants in error of date July 9, 1903, gave any such information.

The judgment is affirmed.