[Sac. No. 1846. In Bank.—November 7, 1911.]

## E. B. MERING, Appellant, v. SOUTHERN PACIFIC COMPANY (a Corporation), Respondent.

COMMON CARRIER—CONTRACT OF SHIPMENT—LIMITATION OF LIABILITY—GROSS NEGLIGENCE—AGREED VALUATION.—A special contract for the shipment of live-stock, in consideration of a reduced rate, which by its terms fixes a valuation on the animal shipped at a specified amount, and under which the carrier assumes a liability only for its gross negligence and to the extent of the agreed valuation, cannot be said to have been imposed on the shipper, or to have been entered

into unfairly, if at the time of its execution its provisions were thoroughly discussed by him and the agent of the carrier and the valuation was inserted by him in the contract in his own handwriting.

ID.—LIABILITY UNDER CONTRACT FIXING VALUATION OF SHIPMENT.—Such a contract is to be construed as an agreement fixing the valuation of the property shipped, and not as a contract limiting the liability of the carrier. Under it the carrier would only be liable as stipulated for gross negligence and then only as to the value of the animal shipped as inserted in the contract.

ID.—SHIPMENT OF ANIMAL—EVIDENCE OF INJURY DURING TRANSIT—PRIMA FACIE SHOWING OF GROSS NEGLIGENCE—LACK OF FOOD AND DRINK.—Evidence that the animal, a mare, was in good physical condition at the time she was shipped, and that forty-six hours afterwards when she arrived at her destination she was very thin and gaunt and her sides drawn, and very hungry and thirsty, and died the next day, together with expert medical testimony that such debilitated condition was probably due to lack of food and drink, although it might have been caused by other causes, is sufficient under such contract, to establish a *prima facie* case of gross negligence on the part of the carrier, and to cast upon it the burden of showing that the death of the animal was not occasioned by such negligence.

ID.—DUTY OF CARRIER TO FEED AND WATER ANIMAL DURING TRANSIT.—The fact that the shipper, under the contract, assumed the duty of accompanying, feeding, and watering the mare while in transit, and did not in fact accompany her, did not relieve the carrier from the duty of properly caring for the animal during her transportation, and proper care involved feeding and watering her.

APPEAL from an order of the Superior Court of Yolo County refusing a new trial. K. S. Mahon, Judge presiding.

The facts are stated in the opinion of the court.

E. B. Mering, and J. E. Strong, for Appellant.

Arthur C. Huston, for Respondent.

LORIGAN, J.—This appeal is before us on a hearing granted after a decision of the district court of appeal for the third appellate district, affirming the judgment and order appealed from.

Plaintiff sued to recover from defendant the value of a certain mare shipped by him over the road of the defendant from the city of Woodland to Redwood City in this state. The com-

plaint alleged the shipment of the mare; that plaintiff did not accompany her and did not retain exclusive or any control over her in transit; that defendant in transporting said mare to said Redwood City was grossly negligent and grossly failed to properly care for said mare, by reason whereof said mare arrived in Redwood City about forty-six hours after being shipped, in a gaunt and emaciated condition, and thereafter on the following day died from the effects of said treatment. Judgment was asked for the sum of $508.00, the alleged value of the animal.

The defendant in its answer admitted the shipment of the mare; denied the allegations of carelessness and neglect and averred that the mare was shipped under a certain contract attached to the answer as part thereof, in which contract plaintiff had stated the value of the mare to be twenty dollars, agreed to accompany her and feed and water her, and further agreed that in no event "is first party (defendant) . . . to be liable for any loss or damage to said live-stock not proven to have been caused by the gross negligence of the first party in performance of, or failure to perform, some duty which under the terms of this contract is due from first party to second party as to said live-stock;" and averred faithful and complete performance of said contract "and all of the obligations imposed upon it by law as a common carrier or otherwise;" that "defendant assumed liability only to the extent of the agreed valuation of said mare as stated in said contract, to wit, the sum of $20.00, and that the compensation for transportation of said mare was based on that value."

· The court found that the mare was shipped under the contract as alleged in the answer, found against plaintiff as to all of his averments of neglect and carelessness of the defendant, and also found that "it is not true that the condition of said mare or the death of said mare was due to any act or omission of said defendant . . . or that the said mare died from the effects of any treatment of said defendant or from the effects of any act or omission of said defendant . . .; and it is not true that plaintiff has been damaged in the sum of $508.00, or any other sum, by the defendant."

Judgment was entered that plaintiff take nothing by his action and that defendant recover its costs.

Plaintiff appeals from the judgment and from an order

denying his motion for a new trial, and asserts as grounds for a reversal the insufficiency of the evidence to sustain two findings made by the court.

The first attack is made on the finding that the mare was delivered to the defendant to be transported under a written contract between plaintiff and defendant attached to the answer under which defendant assumed liability for gross negligence, and for this only, and to the extent of the value of the mare as stated in the contract. The claim of appellant is that the evidence shows that the contract relied on was not freely and fairly made, but was forced and imposed upon him by the shipping agent of the defendant at Woodland. It is not pretended that the defendant refused to ship the mare under any other contract than by the special contract entered into; or that the alternative of shipping under an ordinary bill of lading which would have rendered the defendant liable for full damages was denied him. As executed the contract was entirely acceptable to the plaintiff at the time. Its provisions were thoroughly discussed between plaintiff, who was a practicing attorney, and the agent of the defendant, before it was executed. There was no objection on the part of the plaintiff as to any of the terms of the contract, the only discussion between himself and the agent being as to the valuation of the mare to be stated in the contract and as to the attention—watering and feeding—which would be given the mare in transit by the defendant, as the plaintiff did not intend to accompany her. These were the only matters discussed, and fully understanding the terms of the contract and that it was left to himself to put a valuation on the mare and that the freight rates would be proportionate thereto and the liability of the defendant measured by such valuation, the plaintiff inserted in the contract in his own handwriting a valuation upon the mare of twenty dollars. Under these circumstances there is no room for the claim that the contract was imposed upon plaintiff or that it was not freely and fairly entered into. This contract so entered into between the parties is similar to the contract which was under consideration in *Donlan Brothers* v. *Southern Pacific Co.*, 151 Cal. 763, 11 L. R. A. (N. S.) 811, [91 Pac. 603], where it was held that such a contract "is to be construed as an agreement fixing the valuation of the property shipped and not as a contract limit-

ing the liability of the railroad company"; that under such a contract the carrier would only be liable as stipulated for gross negligence and then only as to the value of the animal to be shipped inserted in the contract. In the Donlan case the railroad company was held liable to the extent of such stated valuation in the contract because it was guilty of gross negligence. In the case at bar as the agreed valuation of the mare under the contract between the parties was twenty dollars, this is the only amount the plaintiff could recover even if the defendant had been guilty of gross negligence in her transportation. The trial court found that defendant had not been so negligent, and this brings us to a consideration of the other point for a reversal insisted upon by the plaintiff, —namely, that this finding is not supported by the evidence.

It was alleged in the complaint and not denied by the answer that the mare arrived in Redwood City about forty-six hours after being shipped. The evidence on behalf of plaintiff showed that the day the mare was shipped at Woodland she was well and in good condition and that plaintiff placed a sack of hay in the car where she could reach it. A witness testified that "when the mare arrived in Redwood City she was very thin and gaunt and her sides were drawn; she was very thirsty and he did not allow her to drink all she wanted. The colt looked well (there was a sucking colt five months old by her side); the next morning she refused to drink and I called a veterinary and he told me to take her out of the barn or she would die, and soon after that she died." A veterinary surgeon at Woodland who had seen the mare the day before she was shipped and who testified that she was then in good condition and well, replying to a hypothetical question which assumed that the mare was well when shipped, had been in the car forty-six hours with a sucking colt by her side "and was taken off the car with her sides drawn and very thirsty and hungry, appearance dull and head drooping, and died the next day" answered as to the cause of the death of the mare, "I would say that it was probably due to not being fed or watered, but it could have been caused by other causes." This was the only evidence offered by plaintiff. Defendant offered no testimony as to whether the mare was fed or watered while in transit, or as to what care or attention she received during transportation.

It is insisted by appellant that this evidence made out a *prima facie* case on the part of plaintiff of gross negligence which cast upon defendant the onus of disproving the *prima facie* case so made and we think this contention must be sustained.

It is not contended by respondent that if the mare had been shipped under an ordinary bill of lading and was delivered at Redwood City in the dying condition which the evidence disclosed, that on a showing by a plaintiff of her being in a healthy condition when shipped and arriving at her destination in an injured condition, the burden of proving that the injury or death of the animal was not occasioned by any want of care on the part of defendant, would devolve upon defendant. Counsel for respondent, however, insists that under the special contract entered into between the parties and which provided that the defendant should not be liable for any loss or damage not proven to have been caused by the gross negligence of the defendant, the burden of proving that the injury or loss resulted from gross negligence was upon the plaintiff.

But we think that the evidence offered by plaintiff was sufficient to make out a *prima facie* case of gross negligence on the part of defendant, casting the burden of proof on it to show that the death of the mare was not occasioned by such negligence on its part.

While the plaintiff under the contract assumed the duty of accompanying, feeding, and watering the mare, he did not in fact accompany her. His agreeing to do so did not relieve the defendant from the duty of properly caring for the animal during her transportation, and proper care involved feeding and watering her during the long period which the evidence shows she was upon the cars. The evidence shows that when the mare was shipped she was well and in good condition and that after being en route for forty-six hours she reached her destination in a dying condition. The veterinary surgeon testified that her condition when taken from the cars at her destination "while it could have been caused by other causes . . . was probably due to her not having been fed or watered." While this testimony does not directly prove that the death of the animal was caused by a failure to feed or water her while in transit, it still amounts to a sufficient proof of facts from which a reasonable inference could be deduced that the

dying condition in which she was delivered at Redwood City was attributable to a failure to feed and water her during the period of transportation. As the defendant was in exclusive control of the mare during transportation the duty was cast upon it to feed and water her and as a reasonable inference from the facts testified to, including the testimony of the veterinary surgeon, is that her dying condition when delivered was attributable to a failure to do this, there was a sufficient *prima facie* showing of gross negligence on the part of the plaintiff casting the burden of proof upon the latter to overcome the *prima facie* case against defendant so made. In this view, the finding of the court complained of by appellant is contrary to the evidence, and for that reason the judgment and order denying a new trial are reversed.

Henshaw, J., and Melvin, J., concurred.

SHAW, J., concurring.—I concur in the judgment, but I do not agree to the proposition that the contract limits plaintiff's damages to twenty dollars. I adhere to the views expressed in my dissenting opinion in *Donlan* v. *Southern Pacific Co.*, 151 Cal. 777, 11 L. R. A. (N. S.) 811, [91 Pac. 603].

Rehearing denied.