### NESTER et al. v. WESTERN UNION TELEGRAPH CO. et al.

No. 8447–Y.

District Court, S. D. California, Central Division.

Nov. 9, 1938.

Supplemental Opinion Dec. 5, 1938.

August J. O'Connor, of Los Angeles, Cal., for plaintiffs.

Edwin Camack and F. A. Waters, both of Los Angeles, Cal., for defendants.

YANKWICH, District Judge.

On September 1, 1937, one of the plaintiffs, Paul Nester, presented himself at the main Los Angeles office of the defendant telegraph company and asked that they transmit telegraphically a money order in the sum of one hundred fifty dollars to the plaintiff Juan C. Charles, at Aramecina, Republic of Honduras. The two plaintiffs were engaged as partners in a mining venture at that place. Nester paid to the Company the sum of $157.14 for the money order.

Through the negligence of the agents of the defendant telegraph company, the money was missent to British Honduras and never was delivered to the sendee. By this action the plaintiffs seek to recover $7600 from the defendants as damages alleged to have been caused by the failure to transmit the money.

That the failure to deliver the money was due solely to the negligence of

the agents of the telegraph company cannot be doubted. The receipt which was given to the plaintiff showed clearly that the destination was Honduras. The message itself had the word "British" written above the word Honduras in the handwriting of the clerk who prepared the message. Even assuming that the word "British" had been on the money order when it was signed by the sender, it was the duty of a telegraph company holding itself out as engaged in the business of transmitting money to foreign countries, when given the locality *(Aramecina)* to ascertain the correct location and to see that the money was sent there. Failure to do so is gross negligence. We are satisfied from the receipt, the physical aspect of the message itself and from the surrounding circumstances and the testimony of the plaintiff, that the word "British" was not on the message at the time he affixed his signature to it. Whether it was added later on in good faith or in bad faith or whether the clerk in the employ of the defendant, whose knowledge of geography was deficient, may have added it, through sheer ignorance or inexperience, is unimportant. The sender cannot· be charged with misleading the telegraph company so as to absolve them of their own negligence.

■ The complaint sounds in tort. Damages for breach of contract are limited to such as may be reasonably supposed to have been within the contemplation of the parties at the time the contract was made. California · Civil Code, Sec. 3300; Hunt Bros. Co. v. San Lorenzo Water Co., 1906, 150 Cal. 51, 56, 87 P. 1093, 7 L.R.A.,N.S., 913; Klepper v. American-La France, etc., Co., 1930, 104 Cal.App. 249, 254, 285 P. 1048. There are exceptions to the rule. When a special purpose is sought to be achieved and this is known to the other party, recovery may be had for an unexpected loss. Overstreet v. Merritt, 1921, 186 Cal. 494, 503, 200 P. 11; Hunt v. United Bank & Trust Co., 1930, 210 Cal. 108, 291 P. 184. Again, one who breaches his contract in bad faith is liable for all damages traceable to the· breach, including ·those which could not have been foreseen at the time the contract was made. Kline v. Guaranty Oil Co., 1914, 167 Cal. 476, 140 P. 1; Westervelt v. McCullough, 1924, 68 Cal.App. 198, 228 P. 734; Overstreet v. Merritt, supra.

■ A person injured by the· tort of another may recover for all the detriment caused proximately by it whether it could have been anticipated or not. California Civil Code, Sec. 3333; Hunt Bros. Co. v. San Lorenzo Water Co., supra; Meyers v. Bradford, 1921, 54 Cal.App. 157, 201 P. 471. There are authorities for the proposition that the negligent failure of a telegraph company to deliver a message may form the basis of an action in tort, although the duty which is violated springs from a contract. Union Construction Co. v. Western Union Telegraph Co., 1912, 163 Cal. 298, 125 P. 242; Western Union Telegraph Co. v. Cook, 9 Cir., 1894, 61 F. 624; Postal Telegraph-Cable Co. v. Nichols, 9 Cir., 1908, 159 F. 643, 16 L.R.A., N.S., 870, 14 Ann.Cas. 369. The complaint here is so framed. However, the question is academic only, so far as the determination of this cause is concerned: The two items of special damages claimed by the plaintiffs were the loss of a shipment of gasoline, ore car, food-stuffs, and radio, through failure to pay the custom duties and storage charges, after the expiration of a six-day period of grace allowed under the law of the Republic of Honduras, and the loss of a mining leasehold.

■ There is no evidence in the record as to the date when the forfeiture was actually incurred. It appears that the shipment arrived at the nearest Honduran port on the 15th day of August, 1937. So that, at the time the money was sent on September 1, the grace period had already expired and the shipment was already subject to seizure and sale by the Honduran Government. The Honduran partner, Charles, who was a witness at the trial, was unable to testify, of his own knowledge, either as to the forfeiture or its date and stated that he never received any notice of forfeiture direct from the customs authorities or witnessed a sale of the goods for non-payment of charges. No official notification of any kind by the authorities was proffered in evidence, although the court called for such a document and was willing to give evidentiary value to it, without other proof than its own indicia of authenticity. Under the circumstances, the loss of these goods, valued at about five hundred dollars, cannot be traced directly to the non-delivery of the money.

Nor is there evidence in the record to substantiate the claim that the failure of this small sum of money to arrive early in September was responsible for the loss of the mining leasehold interest of· the partnership.

The evidence is clear that the operation of the leasehold continued for many months thereafter and that it was not surrendered until the month of May of the following year. More, even at the present time, the mine covered by the leasehold and others are owned by a Honduran corporation, El Porvenir, in which both partners are still interested. So that, assuming that the action is in tort, there is no substantial proof of any of the special damages claimed.

However, the plaintiffs are not without redress.

■■■■■■ For the money order was accepted by the defendant under a condition, filed with its schedule of rates with the Federal Communications Commission, which read:

"In any event, the company shall not be liable for damages for delay, non-payment or underpayment of this money order, whether by reason of negligence on the part of its agents or servants or otherwise, *beyond the sum of five hundred dollars, at which amount the right to have this money order promptly and correctly transmitted and promptly and fully paid is hereby valued,* unless a greater value is stated in writing on the face of this application and an additional sum paid or agreed to be paid based on such value equal to one-tenth of one per cent thereof." (Italics added.)

This undertaking is a provision for liquidated damages, which entitles the sender to recovery of the minimum amount of five hundred dollars in the absence of any proof or without any offer of proof. Sun Printing & Publishing Association v. Moore, 1902, 183 U.S. 642, 22 S.Ct. 240, 46 L.Ed. 366; Ayres & Graves v. United States, 5 Cir., 1938, 95 F.2d 502; Hanlon Drydock & Shipbuilding Co. v. G. W. Mc-Near, Inc., 1925, 70 Cal.App. 204, 232 P. 1002. A carrier or a telegraph company cannot relieve itself by contract from its own negligence. Union Construction Co. v. Western Union Telegraph Co., supra; Western Union Telegraph Co. v. Cook, supra. But it may limit its liability, and if the limitation be fair, applicable to all similarly situated and be the basis for the rate to be paid by the sender, it is not contrary to public policy. Adams Express Company v. Croninger, 1912, 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314, 44 L.R.A., N.S., 257; Kansas City Southern Ry. v. Carl, 1913, 227 U.S. 639, 33 S.Ct. 391, 57 L.Ed. 683; The Ansaldo San Giorgio I. v. Rheinstrom Co., 1935, 294 U.S. 494, 55 S. Ct. 483, 79 L.Ed. 1016; Donlon Bros. v. Southern Pacific Co., 1907, 151 Cal. 763, 91 P. 603, 11 L.R.A.,N.S., 811, 12 Ann.Cas. 1118; Mering v. Southern Pacific Co., 1911, 161 Cal. 297, 119 P. 80; Klotz v. Western Union Telegraph Co., 1920, 187 Iowa 1355, 175 N.W. 825. Hence, although we are unable to award to the plaintiffs the special damages they ask, they are entitled, under the facts alleged and proved, to the sum stipulated as liquidated damages in the contract.

■■■■■■ The allegation of damages in a complaint, while essential, is not the cause of action. United States v. Standard Oil Co. of California, D.C.1937, 21 F.Supp. 645, 660. The new federal rules of civil procedure do not speak of causes of action, but of claims and claims for relief. See Rule 8, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; and see, United States v. Memphis Cotton Oil Co., 1933, 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619. Under the liberal rules of the reformed procedure, a plaintiff is entitled to recover, not on the basis of his allegations of damages or of his theory of damages, but on the basis of the facts as to damages shown in the record. This liberality is carried over into the new rules. In fact, it is broadened. Differences in the forms of claims being abolished, the plaintiff should be denied relief only when, under the facts proved, he is entitled to none. Rule 2, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; Yankwich, New Federal Rules of Civil Procedure, (1938) pp. 14, 15; Yankwich: The Theory of Pleading in California (1930) 3 N.Y.U. Law Quarterly Review, 285; Martin v. Howe, 1922, 190 Cal. 187, 193, 211 P. 453; Wiseman v. Sklar, 1930, 104 Cal.App. 369, 285 P. 1081; Arbuckle v. Clifford F. Reid, Inc., 1931, 118 Cal.App. 272, 4 P.2d 978; Tracy v. Stock Assurance Bureau, 1933, 132 Cal. App. 573, 23 P.2d 41. Here the plaintiffs, under the facts alleged in the complaint and proved at the trial, have shown themselves entitled to recovery, even though they were unable to prove the damages they sought. Under the circumstances, recovery may be had without amending the pleadings to conform to the evidence. The more so as the clause for limitation of liability, under which the award is made, was brought into issue by the defendants, Cf. Rule 15(b), Federal Rules of Civil

Procedure, 28 U.S.C.A. following section 723c, who set it up in their answer and alleged that, *under no circumstances,* could they be held liable beyond the amount limited by it.

Judgment will, therefore, be for the plaintiffs in the sum of $500 against the Western Union Telegraph Company only. Plaintiffs take nothing against the defendant J. T. Inie.

Findings and judgment to be prepared by the plaintiffs under Rule 8.

### Supplemental Opinion.

 In the defendant's objections to the proposed findings, it is insisted that the interpretation we have given to the contract overlooks the fact that various cases (Postal Telegraph-Cable Co. v. Warren-Godwin Co., 1919, 251 U.S. 27, 40 S.Ct. 69, 64 L.Ed. 118; Western Union Telegraph Co. v. Esteve Bros. & Co., 1921, 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094; Western Union Telegraph Co. v. Priester, 1928, 276 U.S. 252, 48 S.Ct. 234, 72 L.Ed. 555) interpreting liability clauses of this character in contracts of telegraph companies have referred to them as "limitations of liability". These cases interpret the liability for unrepeated messages and hold that beginning with the exercise of control by the Federal Government over their rates in 1910, the undertakings on the part of telegraph companies, as to rates, are matters of law and not of contract. The reference in these decisions to clauses of this character as "limitations of liability" does not stand in the way of interpreting the clause under consideration here as liquidation. Liquidated damages are a maximum limitation of liability. And while it is true that, in interpreting conditions attached to contracts which are under the supervision or control of a federal body, the requirement of uniformity and the safeguards against discrimination, should be borne in mind, words, whether used in a contract by a person whose business is not the subject of governmental control or by a common carrier, mean the same thing. Unless, of course, by their nature, they acquire a special significance when used in one connection which they do not have when used in another. But when a telegraph company states that "the right to have a money order promptly and correctly transmitted and promptly and fully paid" is valued at a definite sum, it can mean one thing only—that the parties *have agreed, for the purpose of the contract, upon a valuation as effectively as if they had agreed upon the value of a shipment of goods.* And having fixed the *value of the right of a person to have a thing done in a certain manner,* the company, even though it be a common carrier, should not, when it has violated that right and suit is brought for such violation, be heard to say that *it did not intend* to fix the value of the right *at the sum named but at a sum up to the sum named.*

 In Sun Printing & Publishing Association v. Moore, 1902, 183 U.S. 642, 22 S.Ct. 240, 46 L.Ed. 366, the damage clause read [page 242]: "That for the purpose of this charter *the value of the yacht shall be considered and taken* at the sum of seventy-five thousand dollars ($75,000.00) * * *. That our liability hereunto *shall in no case exceed the sum of seventy-five thousand dollars* ($75,000.00)." (Italics added.) It is impossible to see any difference between the wording in that agreement and the wording we are considering. If at all, the wording we are considering lends itself more readily to an interpretation as liquidated damages than this wording. For the wording under consideration fixes *the value of the right* to have the money order promptly and correctly transmitted and promptly and fully paid. If the sum mentioned be a maximum, dependent upon proof of actual damage, the words are meaningless. We would have to eliminate them entirely from the contract because the clause ending with the words "beyond the sum of five hundred dollars" without the modifying phrase which follows, would, alone, carry that meaning. The court in Wernick v. Western Union Telegraph Company, 1937, 290 Ill.App. 569, 9 N.E.2d 72, in arriving at a conclusion contrary to ours, chose to eliminate from the contract the valuation clause. We have not the right to do so. If the interpretation results in injustice, either to the company or to some of its clients, this can be remedied readily. The fact that the Interstate Commerce Commission has not foreseen the possibility of interpreting the clause as a clause for liquidated damages means little. Even governmental regulatory bodies may be guilty of oversight. At any rate, their failure to read the contract as we read it is not a prior adjudication of its meaning which forbids our exercising independent judicial judgment. Nor does the ruling in Southeastern Express Company v. Pastime Amusement Company, 1936, 299 U.S. 28, 57 S.Ct. 73, 81 L.Ed. 20, stand

in the way of this interpretation. The court there merely held that, under a tariff for interstate shipment, there could be no recovery in excess of the amount at which goods were valued in the tariff. There, recovery was actually had in excess of the valuation. I consider this decision complementary to the Sun Case. The Sun Case holds that no recovery can be had *below* the valuation. This case holds that no recovery can be had *above* the valuation.

We feel, therefore, that the interpretation we have placed upon this clause is valid, and that the cases discussed do not militate against it.

We adhere to the view expressed in the previous opinion.