WESTERN UNION TELEGRAPH CO. v. LAWSON.

(Circuit Court of Appeals, Ninth Circuit.   October 3, 1910.)

No. 1,767.

1. TELEGRAPHS AND TELEPHONES (§ 67*)—MESSAGES—DELIVERY—NEGLIGENCE —DAMAGES.

Where plaintiff sued defendant telegraph company in tort for negligence in failing to promptly deliver a business telegram to her, plaintiff was not limited to a recovery of nominal damages under the rule that the damages which plaintiff is entitled to recover in tort are not necessarily those that might reasonably be supposed to have been in the contemplation of both parties when defendant undertook the service, the negligent performance of which constitutes the cause of action.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 64–68; Dec. Dig. § 67.*

Measure of damages in action against telegraph and telephone companies, see notes to Western Union Tel. Co. v. Coggin, 15 C. C. A. 235; Western Union Tel. Co. v. Morris, 28 C. C. A. 59.]

2. TELEGRAPHS AND TELEPHONES (§ 67*)—MESSAGES—FAILURE TO DELIVER— DAMAGES.

Plaintiff, having an indebtedness about to mature which she was unable to pay without assistance or without sacrificing her property, applied to W. for a $500 loan, requesting him to wire plaintiff at once whether he would make the loan. W., on the next day after receiving the letter, wired plaintiff that he would mail draft that day, and the message, though received at destination on the same day, was not delivered to plaintiff until nearly a fortnight thereafter, though plaintiff many times applied to defendant's office at destination for the telegram and informed defendant's servants of the importance thereof. Not receiving the message, she assumed that the loan would not be made, and was compelled to sacrifice her property to pay the debt. *Held,* in an action against defendant for negligence, that plaintiff was not limited to a recovery of nominal damages, but was entitled to recover compensatory damages.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 64–68; Dec. Dig. § 67.*].

3. TELEGRAPHS AND TELEPHONES (§ 38*)—MESSAGES—NEGLIGENCE.

A telegraph company is bound to deliver a message to the addressee as soon after transmission as is reasonably practicable, and, on failure to do so, the company is liable for all damages arising directly therefrom.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 33; Dec. Dig. § 38.*]

4. TELEGRAPHS AND TELEPHONES (§ 53*)—MESSAGES—FAILURE TO DELIVER— LOSS—PROXIMATE CAUSE.

Plaintiff on January 19th by letter requested a loan from W. to prevent a sacrifice of plaintiff's property, stating that the money would be needed by February 1st or not later than the 4th; also stating that, if W. would make the loan, plaintiff must know "at once," requesting W. to wire answer. The wire having been sent promising to make the loan, but not having been delivered because of the telegraph company's negligence, plaintiff sold her property at a sacrifice January 31st, which was the day the draft was due in course of mails. *Held,* that the fact that the sale was made five days before the time stated in plaintiff's letter as the last day the money would be of any assistance to her did not show that the telegraph company's negligence was not the proximate

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
182 F.—24

cause of her loss, in view of her statement that she must be informed at once whether the loan would be made.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 33; Dec. Dig. § 53.*]

5. TELEGRAPHS AND TELEPHONES (§ 67*)—DAMAGES FOR DELAY IN DELIVERING MESSAGE—REMOTENESS—CERTAINTY.

Where plaintiff requested a loan to prevent a sale of her property at a loss to pay a matured debt, and requested information as to whether the loan would be made at once by wire, and, obtaining no message by reason of the telegraph company's negligence in failing to promptly deliver a message stating that the loan would be made, plaintiff sold her property at a loss, she was not limited to a recovery of nominal damages for the telegraph company's delay on the theory that her actual loss was remote, uncertain, and speculative.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 64–68; Dec. Dig. § 67.*]

6. TELEGRAPHS AND TELEPHONES (§ 66*)—MESSAGES—DELAY—EVIDENCE.

Where plaintiff requested a loan to prevent a sacrifice of her property, and also requested notice of whether the loan would be made by telegram, and the message informing plaintiff that the loan would be made was delayed so that plaintiff made an unfavorable exchange of her property, evidence, in an action against the telegraph company for delay, that plaintiff would not have accepted the deposit made by the person who took her property in exchange had she received the telegram, was admissible.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 62; Dec. Dig. § 66.*]

In Error to the Circuit Court of the United States for the Northern Division of the Western District of Washington.

Action by Jennie Lawson against the Western Union Telegraph Company. Judgment for plaintiff, and defendant brings error. Affirmed.

This action was brought by Mrs. Jennie Lawson against the Western Union Telegraph Company to recover damages for the alleged negligence of the defendant in failing to make prompt delivery of a telegraphic message to her at her residence in Seattle, Wash.

It is alleged in the complaint: That Mrs. Jennie Lawson was in January, 1908, proprietress of a certain hotel and lodging house in the city of Seattle, in the state of Washington, known as the St. Francis Hotel. That, being apprehensive that an indebtedness of about $500 which was to fall due about February 1, 1908, could not be met by her without assistance from relatives or friends, she had offered her leasehold interest and her furniture in said hotel for sale for the sum of $10,000 which sum was more than $2,000 less than the reasonable value thereof. That, in order to avoid the making of so large a sacrifice in the sale of said leasehold interest and personal property, she applied to A. P. White, residing in Weston, in the state of West Virginia, for a loan of $500 to enable her to meet said obligation and prevent said sacrifice. That in her letter to said White she requested him to telegraph to her whether or not he could and would loan her that amount. That said White received her letter on Sunday, the 26th day of January, 1908, and on the next day he sent to her from said Weston a telegraphic message by the defendant's lines reading as follows: "Weston, West Virginia, January 27, 1908. Jennie Lawson, Care St. Francis Hotel, No. 816 Union Street, Seattle, Washington. Will mail you draft to-day. A. P. White." That said telegraphic message was delivered to defendant's agent at Weston by one H. W. Lightburn, who at the time of so delivering the same told said agent that it was very important that the telegram be delivered to Jennie Lawson that same day. That said telegram was received in the defendant's telegraph of-

fice in Seattle at 35 minutes past 7 o'clock on the morning of the 27th day of January, 1908. That defendant did not deliver the same to the plaintiff on said day, nor at any time, nor at all until Saturday, the 15th day of February, 1908. That from and after the 26th day of January, 1908, the plaintiff by telephone daily called up the defendant's office in said city of Seattle, giving her name and residence, and inquired if there was any telegram for her. That plaintiff told defendant's Seattle office that she was expecting a telegram, that it was very important that it be delivered to her immediately upon its receipt by defendant. That the defendant's said office invariably answered her that there was no telegram there for her. That between the 26th day of January, 1908, and the 1st of February, 1908, she frequently made said inquiry of said telegraphic office two or three times a day with the same result. That, failing to receive said telegram and assuming that said White was unable to make said loan to her, she was obliged to accept an offer of certain real property valued at $5,000, the assumption by the purchaser of the mortgage of personal property amounting to $2,650, and cash $850, making a total of $8,500 for her leasehold interest and furniture in the hotel. This offer she was obliged to accept and did accept on the 1st day of February, 1908. That, had she received said telegram seasonably, she would have been in position to save said leasehold interest and personal property, and would have refused said offer and would have awaited, without sacrifice. the arrival of said draft by mail had she been informed that it was on its way to her. That after she had accepted said offer and conveyed her said interest and property, she received by mail a bank draft from the said White for the sum of $500. That it came to her too late to be of any benefit to her. That by reason of the premises she had made a sacrifice of not less than $3,500, and that by reason of the gross negligence of the defendant the plaintiff had suffered damage in the sum of $3,500.

The defendant in its answer admits that on the 27th day of January, 1908, A. P. White at Weston, W. Va., delivered to the defendant for transmission over its lines to the plaintiff the telegram set forth in the complaint; but denies that its agent at Weston was told by any one at the time of the delivery of said message that it was very important, or important at all that the telegram be delivered to the plaintiff that same day; admits the receipt of the telegram at defendant's office in Seattle as alleged in the complaint; admits that defendant did not deliver the contents of the telegram to the plaintiff on said day nor at any time prior to the 7th day of February, 1908, and did not deliver the written message itself until February 15, 1908; denies knowledge as to the application to A. P. White for a loan, or the reason for such an application, or the purpose of the loan, or the contents of the letter, or when the said White received such a letter; denies that the plaintiff sustained the damages alleged in the complaint. But the answer does not deny the allegations of the complaint that from and after January 26, 1908, plaintiff by telephone daily called up the defendant's office at Seattle, gave her name and residence, and inquired if there was any telegram for her, stating that she was expecting a telegram; that it was very important that it be delivered to her immediately upon its receipt by the defendant; that defendant's said office invariably answered her that there was no telegram there for her; that between January 26, 1908, and February 1, 1908, she frequently made said inquiry at said telegraph office—two or three times a day —with the same result.

Upon the issue thus presented the case was tried before the court and jury.

The plaintiff testified that she was the proprietress of the Hotel St. Francis, 816 Union street, Seattle. That she wrote a letter to Mr. A. P. White, Weston, W. Va., on January 19, 1908, which she identified and it was introduced in evidence. In this letter to White she states her financial condition and requests a loan of $500, which she says if he can make her she must know at once. "Please wire me," she says, "at once what I can depend upon. Send me wire message at my expense." It appears from the deposition of Mr. White that this letter was received by him on Saturday night, January 25, 1908; that on Sunday, January 26th, he answered the letter, stating that on the following day he would send her the money and would wire her in the morning. In this letter he inclosed a draft in favor of the plaintiff for $500.

This letter and draft were received by the plaintiff on the afternoon of January 31, 1908. In the deposition of Mr. White he says he was sick when he received the letter from plaintiff, and on Monday morning he called on H. W. Lightburn to procure the draft for him, and to telegraph plaintiff that the money was coming. From the deposition of H. W. Lightburn, it appears that he obtained the draft from the bank when the bank opened about 9 o'clock on the morning of January 27, 1908, inclosed it in an envelope with Mr. White's letter addressed to plaintiff. He also wrote a telegram and delivered it to defendant's operator at Weston, W. Va., addressed and to be transmitted to plaintiff at Seattle. This telegram was delivered to the operator at Weston at about 8 o'clock in the morning. The witness told the operator "that it was an important message and to get it through as quick as possible." The message was as follows: "Weston, West Virginia, January 27, 1908. Jennie Lawson, Care St. Francis Hotel, No. 816 Union Street, Seattle, Washington. Will mail you draft to-day. A. P. White."

It appears from the testimony introduced on behalf of the defendant that this telegram was received at Seattle at 7:35 on the morning of January 27, 1908. The address on the message as received was "Jennie Lawson, care St. Francis Hotel, 816 Union Street, Seattle," but "816 Union Street" was left off the message when it was written out and placed in the envelope for delivery by the clerk in the telegraph office whose business it was to address the envelope. He says he took it for granted that it was the St. Francis Hotel at Ninth and Madison streets. The message was delivered at the latter address at eight minutes past 8, and was receipted for by one W. O. Johnson. Plaintiff testified that she received the telegram on February 15, 1908; that on the morning of January 27th she knew that they (White) had got her letter and would certainly reply at once; that about 10 o'clock on that morning she called up the telegraph office and inquired if there was a message for her. They said no message had been received, and from that time on frequently, time and again, night and day, she called up the telegraph office. She thought perhaps they might misunderstand the name. She told them to look and see if there was any message at all for any Lawson—if they had received any Lawson message whatever; it was a matter of vital importance to her; it meant something to her. This she did repeatedly. The answer was there was no message whatever for Lawson. Each time they said there was no message for her. She mentioned the street and number, there being some confusion about the other St. Francis. She mentioned the street each time and her name and everything as clear as possible. She finally received the message on February 15, 1908. The witness also testified concerning the damages she had sustained by reason of the failure of the defendant to promptly deliver the telegram from White.

The defendant claimed that it appeared from the amended complaint that plaintiff was not entitled to more that nominal damages, and offered to allow such a judgment to be entered for the plaintiff. At the close of the testimony on behalf of the plaintiff, the defendant also moved the court to withdraw the case from the jury and enter a judgment in favor of the plaintiff for nominal damages. The court denied the motion, and the jury rendered a verdict for $500.

The case comes here on writ of error from the judgment entered upon the verdict.

Beverly L. Hodghead, George H. Fearons, and Harold Preston, for plaintiff in error.

John Arthur, Richard G. Hutchinson, and George F. Hannan, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The objection of the defendant that plaintiff was only entitled to recover nominal damages is based upon the claim that the damages alleged to have been sustained by the plaintiff were not the direct, natural, and

proximate result of the defendant's negligence, and not within the contemplation of the parties when the contract was made. In support of this objection the defendant cites the case of Hadley v. Baxendale, 9 Exch. 341, 356 (1854). The action in that case was for a breach of contract by a carrier claiming special damages for delay in the delivery of a broken shaft to the consignee. Baron Alderson, speaking of the proper rule of damages in such a case, said:

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally; i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach."

The latter provision of the rule here stated is not applicable to the present case. This is an action in form ex delicto, charging the defendant with negligence in failing to perform a public duty in which it was required to exercise reasonable care and diligence. It is not an action on a contract for the failure to perform a contractual obligation. The damages which the plaintiff is entitled to recover in tort cannot be said to be such as might reasonably be supposed to have been in the contemplation of both parties when defendant undertook the service, the negligence in the performance of which is the cause of complaint. In contracts the essential element is the meeting of the minds of the contractual parties, by which each gives his voluntary assent to the thing agreed upon. 7 Am. & Eng. Encyc. (2d Ed.) 98. In cases of tort charging negligence in failing to perform a public duty, there is no such element of agreement or meeting of the minds of the parties upon which a liability can be founded. The distinction is well illustrated in the later English case of the Argentino, L. R. 13, P. D. 191, 201 (1888). The action was for damages resulting from a collision between two vessels caused by the negligence of one of them. It was held that a collision at sea caused by the negligence of an offending vessel was a mere tort, and that the damages recoverable in such a case must be measured according to the principles of common law which the court proceeds to state as follows:

"Speaking generally as to all wrongful acts whatever arising out of tort or breach of contract, the English law only adopts the principle of restitutio in integrum, subject to the qualification or restriction that the damages must not be too remote; that they must be, in other words, such damages as flow directly and in the usual course of things from the wrongful act. To these the law superadds in the case of a breach of contract (or, to speak according to the view taken by some jurists, the law includes under the head of these very damages, where the case is one of breach of contract) such damages as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of its breach, with this single modification or exception the English law only permits the recovery of such damages as are produced immediately and naturally by the act complained of."

From this statement it appears that the second part of the rule in Hadley v. Baxendale does not apply to torts. It appears, further, from this case that the claim in controversy was for damages in respect to the loss of an agreement for the future hiring of the injured vessel.

One of the objections to the claim was that, under the rule in the case of Hadley v. Baxendale, the owners of the wrongdoing ship were not liable to make good the loss arising under a contract relating to future earnings of which they had no notice; but the court refused to follow this rule, stating the question to be the value of the loss of employment "to be calculated in the case of a vessel, which but for the accident would have been serviceably used by her owner in a particular manner." Speaking to this question, Bowen, L. J., said:

"I do not think that the loss of such average and ordinary earnings in respect of a vessel which was advertised to sail, as the Argentino was, would be other than the direct and natural consequence of the collision. The question is not what would have been the damage that might have been anticipated in the case of other ordinary ships, but what was the direct and actual damage done in the case of the Argentino. We have not to consider, in other words, whether sea-going ships ordinarily have such engagements as the Argentino had at the time of the collision, but what was the direct and natural consequence of a collision to a ship which in fact enjoyed such prospects of employment."

It seems clear that the court cannot hold as a matter of law upon the authority of Hadley v. Baxendale read in the light of the decision in the Argentino that the defendant for its admitted negligence cannot be called upon to respond in more than nominal damages for the injury sustained by plaintiff by reason of such negligence. The English rule derived from these two cases as stated in 10 Halsbury's Laws of England, § 584, is as follows:

"The rule with regard to special circumstances is somewhat different in cases of tort from that in cases of contract. In cases of tort which are not founded upon contract the defendant's knowledge must be estimated at the time of the wrongful act. And the inquiry is not only whether he knew of any special circumstances attaching at that time, but also whether he had reasonable means of knowing them, and whether the damage which ensued was such as he could fairly be expected to anticipate as likely to result from his act."

The next case cited by the defendant is that of Griffin v. Colver, 16 N. Y. 489, 498, 69 Am. Dec. 718. The action in that case was on a contract for the purchase price of a steam engine. The defendants sought to recoup damages for failure to deliver the engine at the time mentioned in the contract. The defendants were not allowed by the referee, before whom the case was tried, to estimate the damages by a calculation of the profits that might have been made during the time the operations of the mill were suspended by reason of the nonperformance of the contract. The action of the referee was sustained by the Court of Appeals because the damages actually sustained by the plaintiff had not been shown by clear and satisfactory evidence, but the court said:

"Profits which would certainly have been realized but for the defendant's default are recoverable; those which are speculative or contingent are not."

The action was for a breach of the contract, but the rule stated by the court is equally applicable to actions in tort, and would not, if applied in the present case, have excluded from the consideration of the jury the evidence relating to the damages claimed by the plaintiff. It is true the court said further that "the damages must be such as may

fairly be supposed to have entered into the contemplation of the parties when they made the contract—that is, must be such as might naturally be expected to follow its violation"—but this qualification is inapplicable to the present case as a similar provision of the rule in Hadley v. Baxendale.

The case of Dorgan v. Telegraph Co., 7 Fed. Cas. No. 40,004, p. 918, decided in 1874, is cited by the defendant as an exact counterpart of the case now before the court, and the law there stated to be applicable to this case. The cause of action in that case was upon a contract charging negligence in the transmission and delivery of a message by the telegraph company whereby the plaintiff sustained damages. The case was tried before a jury, and, as reported, contains the questions discussed in the instructions to the jury. The telegraphic message in question was a reply message in cipher. It was written on a telegraph blank which contained the stipulation that to guard against mistakes the message should be repeated, and, if not repeated, the company would not be liable for mistakes or delays in delivery beyond the amount recovered for sending the same. The court instructed the jury that the company was not allowed to protect itself by contract from liability for the results of its own negligence, and denied the validity of this contract for immunity for all except nominal damages. As we shall see presently, the Supreme Court afterwards held that this stipulation was valid and binding upon the parties. It appears that the sender of the message told the receiving clerk in the telegraph office at New York City, where the message was deposited for transmission to Mobile, Ala., that the message was important, and requested him to forward it immediately. The message was deposited in the New York office a few minutes before 6 in the evening, was received at Mobile at 10 o'clock p. m., but was not delivered to the plaintiff in Mobile until half past 10 o'clock a. m. of the next day. The plaintiff at Mobile was expecting the reply message, but failed to notify the delivery office that he was expecting the message and desired its immediate delivery. The defendant denied that it had been guilty of negligence or carelessness in transmitting or in delivering the message, and charged that the plaintiff had been guilty of contributory negligence in not notifying the delivery office that he expected an important message and desired its immediate delivery. The court instructed the jury that the facts established the negligence of the defendant, and the burden of proof was upon the defendant to rebut the prima facie case thus made. Referring to the contractual liability of the defendant in the delay in transmitting the message, the court instructed the jury as follows:

"The damage sustained by the defendant must have been within the reasonable contemplation of the parties at the time the contract for transmission of the message was made. If plaintiff through his agent in New York at the time he left the message for transmission informed defendant's agent that the message was important, and the dispatch itself indicated that it was a business message, and that serious damage might accrue to plaintiff if it was not properly transmitted, it became the duty of the defendant to use diligence to put it upon its transit, and it would be liable for the damage which might be the result of negligent delay in sending the message. But if the plaintiff's agent simply said it was an important message and requested its early transmission, and the dispatch itself was so worded that it did not in any way

indicate that plaintiff might suffer damage by its delay; then the defendant would only be liable for nominal damages."

That is to say, if the dispatch was so worded that it did not notify the delivery office that plaintiff might suffer damage by its delay in delivery, then the defendant would only be liable for nominal damages. But the court, referring to the delay in the delivery of the message to the plaintiff in Mobile, said further:

"If the negligence should be found in the delivery of the dispatch after it had reached its destination, you should not give any weight in estimating the damages to what was said by the plaintiff's agent at the other end of the line about the importance of the dispatch. The question is: Was the agent of the company here in Mobile under the circumstances, and looking to the words of the dispatch, put upon notice that a failure to deliver it promptly would entail a serious damage upon the plaintiff?"

The dispatch was in cipher and in and of itself conveyed no notice of any kind to the defendant's agent in Mobile, and the plaintiff did not notify the agent at that place that he was expecting the dispatch and desired its immediate delivery. The differences between the facts in this case and the one before the court are important. In the case before the court, the message was not in cipher, and by its working conveyed a notice to both the receiving and delivery offices that it related to a business transaction. The agent who received the message was told that "it was an important message, and to get it through as quick as possible." It was accordingly promptly transmitted to Seattle, where it was received in due time, but it is admitted the defendant was negligent in its delivery, and there is no claim that plaintiff was guilty of contributory negligence in failing to notify the Seattle office of its importance; but, on the contrary, she testifies that on the morning the message was received at Seattle she called up the telegraph office and inquired if there was a message for her, and, for fear that there might be some mistake in the name, she asked if there was a message for any Lawson. She gave her street and number, and stated that the message was of vital importance to her. She made repeated inquiries of the same tenor, but was told by defendant's agent that there was no message for her and no message for any Lawson. It appears from the testimony of the defendant's agent that the street and number had been left off the message by the clerk in the delivery office and the message itself delivered to a wrong address. The message as written out and delivered at the Seattle office contained a notice that it related to a business transaction, which, together with plaintiff's inquiries, put the defendant on notice that damage would accrue from delay in its delivery. If the defendant had desired any further information concerning the message, it could have obtained that information from the plaintiff. It had the "reasonable means" mentioned in the English rule for acquiring a knowledge of all the circumstances. We have here negligence of the defendant in leaving plaintiff's correct address off the message, negligence in delivering the message to the wrong address, negligence in failing to inquire of plaintiff as to the circumstances concerning its importance, and negligence in failing to examine the files of received messages and tracing up its wrongful delivery when the plaintiff inquired for her message. All

of these acts of negligence were of a character that any prudent and careful person would have avoided in the ordinary transaction of business, and they all amounted to gross and unexcusable negligence. The case cited as an authority becomes by contrast in its material facts an authority for plaintiff in the present case.

In the case of Primrose v. Western Union Tel. Co., 154 U. S. 1, 14 Sup. Ct. 1098, 38 L. Ed. 883, decided in 1893, the action was also on a contract to recover damages for a negligent mistake in transmitting a cipher message which was not repeated as required by the stipulation on the back of the blank upon which the message was written. It was held by the Supreme Court that the stipulation was reasonable and valid, and that the message in the case not having been repeated, and the message being wholly unintelligible to the company or its agents, and the company not having been informed by the message or otherwise of the nature, importance, or extent of the transaction to which the message related, or of the position which the plaintiff would probably occupy if the message were correctly transmitted, the damages which the plaintiff was seeking to recover in the action were not such as could reasonably be considered either as arising according to the usual course of things from the supposed breach of the contract itself or as having been in the contemplation of both parties when they made the contract as a probable result of a breach of it. The rule established in this case clearly has no bearing upon the controversy in the case before the court.

The case of the Western Union Tel. Co. v. Coggin, 68 Fed. 137, 15 C. C. A. 231 (1895), also cited by the defendant, was an action on a contract for the recovery of damages for the nondelivery of a cipher message. The message was written upon a telegraph blank containing a stipulation that the telegraph company would not be liable for the nondelivery of an unrepeated message beyond the sum received for sending it. The message was not repeated, and there was nothing in the message to advise the telegraph company what it was about, or that any damage would result from its nondelivery, nor was there any evidence that the person to whom the message was sent would have understood or would have taken any action on account of it, nor that anything that was not done would have been done if the message was delivered. The court followed the rule declared in Primrose v. Western Union Tel. Co., supra, which, as before stated, is inapplicable here.

The remaining cases cited by the defendant have been carefully examined, but they have not been found to support defendant's claim that as a matter of law only nominal damages can be imposed for the admitted negligence in this case. Where a case has been found applicable at all, it is authority for the contrary rule. The true rule applicable to this case is stated in Jones on Telegraph and Telephone Companies, in section 294, as follows:

"It is the duty of all telegraph companies, after assuming the responsibilities attached to the nature of a business which they follow, to deliver a message to the proper party as soon after their transmission as is reasonably practicable; and, on a failure so to do, they will be liable for all the damages arising directly therefrom. It is as great, if not a greater, duty to make a prompt delivery as to exercise same in its transmission. * * * What is

due diligence in this respect is a question of fact, and not one to be left to the judgment of the company."

In Joyce on Electric Law, § 733, the author, discussing the obligations of telegraph companies to the public, says:

"The nearest approach to any reasonable, general rule is that which requires of such companies a degree of care commensurate with their undertaking, acting as such public or quasi public servants. It is also true that such care and skill is required as can be obtainable by the use and employment of proper and suitable appliances, instruments, and apparatus, and competent and skilled servants, agents, and operators, and such companies are obliged to use all reasonable and proper means and agencies within their control to secure effective service, promptness, and accuracy. If their instruments, appliances, or apparatus are defective, their servants and operators unskilled or incompetent, the company cannot evade responsibility for mistakes, inaccuracies, errors, or delay occasioned thereby."

In section 742 the same author, discussing the liability of the telegraph company for failure to perform its duty as a public servant, says:

"A telegraph company must receive, transmit, and deliver a message promptly, and for a failure so to do it is liable for the direct and natural result without regard to the degree of negligence. * * * A failure to deliver is held not a mere breach of contract, but a neglect to perform a duty which rests upon the telegraph company as a public servant."

In Croswell on the Law Relating to Electricity, § 574, the rule is stated as follows:

"The courts are uniform in holding that the plaintiff may recover any damages which are the natural, direct, and proximate results of the negligence of the telegraph company. The court, looking at the message itself, without other information, can say in such cases that the damages claimed by the plaintiff are related to the negligence of the defendant by the strict relation of direct, natural, and proximate cause and effect, and can hold that the damage may be recovered by the plaintiff whether or not, as a fact, the defendant company did contemplate these damages as resulting from its negligence. The rule in this aspect assumes the form that the defendant company is bound to consider that such damages will result from its negligence, on the familiar principle that a person is bound in the law to consider the natural and direct results of his act, and cannot be allowed to say that as a fact he did not consider them. The law holds everybody to such a measure of reasonable foresight as to the consequences of his acts."

In the present case, the court instructed the jury that the cause of action was based upon the delinquency of the defendant in failing to deliver a dispatch that was sent on the 27th of January, 1908, from Weston, W. Va., addressed to the plaintiff in Seattle; that—

"the defendant was engaged in transmitting messages by wire, and, while it was not an insurer, it was required to use reasonable care and diligence in the performance of this public duty which it had assumed when it received the dispatch at Weston and undertook to send it to Seattle. It failed in this regard, and is therefore guilty of negligence, for the defendant does not contend that the dispatch was actually delivered until February 17th. Whether it is liable to the plaintiff beyond nominal damages depends upon two propositions: (1) That it was sufficiently advised of the importance to the plaintiff of the message; that must so appear in order to entitle plaintiff to substantial damages. You have a right in determining that question to consider what, if any, notice was given to the sending office, and what, if any, notice was given or inquiry made at the receiving office concerning the telegram, in order to ascertain whether the defendant had actual notice of its importance.

and the consequences which might be expected to flow from the failure to deliver it, or under all the circumstances had sufficient notice to put a reasonably prudent person on inquiry concerning those consequences. If you find from the evidence that notice was given at the sending office that the dispatch was important, and inquiry was repeatedly made at the office in Seattle by the plaintiff concerning the dispatch, and that those in charge here were repeatedly notified by the plaintiff that the dispatch was important, coupled with the notice which the dispatch imparted, that would be sufficient to justify a finding on your part that the defendant did have such notice as would charge it with the consequences which might ensue to the plaintiff from a failure to deliver. (2) If your finding is against the plaintiff in this regard, then the case would end. On the other hand, if you find that the defendant did have reasonable notice of the importance of the prompt delivery of the dispatch, or, under the circumstances, should have inquired of it, then you should ascertain what, if any, damage has resulted to the plaintiff."

In these instructions we think the court stated the law very clearly under which the jury was authorized to award to the plaintiff a sum in excess of nominal damages.

It is next contended that the delay in the delivery of the message was not the direct or proximate cause of the loss claimed to have been sustained by the plaintiff. This contention is based upon a passage in the letter of the plaintiff to White dated January 19th, asking for the loan of $500, in which she stated that the money would be needed "by 1st or not later than the 4th of Feb." From this statement it is argued that as the sale of the property was made on January 31st, the day the draft was due in the course of the mail, and five days before the time stated in the letter as the last day the money would be of any assistance to her, the crisis in her affairs had yet not arrived. This statement in plaintiff's letter had reference only to the last day that the receipt of the money would be of any aid to her; and, if this statement is to be used against her, it must be taken in connection with other statements in the letter showing that the real crisis in her affairs was then pending, and that a notification by telegraph at once was necessary. She says in her letter:

"Now, if you can do this for me, I must know at once about it. I have no time as you see. * * * Please wire me at once what I can depend upon; send wire message at my expense. I will certainly wait anxiously to hear."

The jury had the right to infer from this statement and other evidence and the common knowledge as to business transactions that, in order to save the property, she must be notified by telegraph at once, otherwise she would have to sacrifice it, and would incur the loss the evidence tended to show she subsequently did incur.

It is contended that the damages claimed by plaintiff were remote, uncertain, and speculative because it was not certain that had she received the money and liquidated her obligations and retained the property the future business of the house would have been certain and secure. There was no evidence as to the future business of the house and that question was not before the jury. The question was whether not being advised by telegraph that she would receive the money by a certain time she sold or exchanged the property at a sacrifice. She did sell and exchange it, and there was testimony tending to show that she sustained a loss by reason of such sale and exchange, and such evidence tended to show that the damage flowed directly and in the

usual course from defendant's neglect, and was within the rule limiting the scope of such evidence.

It is objected that evidence was admitted to show that, had the plaintiff received the telegram, she would·not have accepted a deposit of $500 made by the person who took her property in exchange for other property to·bind the contract of exchange. This evidence related to the proceedings in the exchange of the property whereby she became bound to carry out its terms. It was an incident of the contract of sale and exchange, and was substantially equivalent to saying that had she received the telegram she would not have disposed of the property. The evidence was admissible as part of the transaction wherein she sustained the loss caused by the defendant's neglect.

We find no error in the record.

The judgment of the lower court is therefore affirmed.