### WESTERN UNION TEL. CO. v. COGGIN et al.

(Circuit Court of Appeals, Eighth Circuit. May 6, 1895.)

#### No. 510.

TELEGRAPH COMPANIES—LIABILITY FOR NONDELIVERY OF MESSAGE.

One C. made a contract on behalf of himself and his partner, for the purchase of a lot of horses, on which he paid down $250, the balance to be paid on July 24th, or, in default of payment, the $250 to be forfeited. On July 18th C. delivered to defendant's telegraph operator at O. a message addressed to his partner at P., and reading: "Be on hand evening of third. I got early,"—saying to the operator that he wanted his partner to be sure to get the message, as it was a business matter. The message was written on defendant's blank (containing a proviso that defendant should not be liable for the nondelivery of an unrepeated message beyond the sum received for sending it, nor for errors in obscure messages), and was an unrepeated message. C. testified that his purpose in sending the message was to have his partner meet him at W., and bring money to pay for the horses. There was no evidence that his partner would have so understood it, or could or would have complied with the request. The message was not delivered, and C. lost the benefit of the contract. *Held*, that the defendant was not liable for any damages, since it did not appear that the message would have been understood by the person to whom it was addressed, and there was nothing in it to advise the defendant what it was about, nor what damage would result from its nondelivery. Primrose v. Telegraph Co., 14 Sup. Ct. 1098, 154 U. S. 1, followed.

In Error to the United States Court in the Indian Territory.

This was an action by Thomas J. Coggin and Robert E. Farris against the Western Union Telegraph Company to recover damages for the nondelivery of a message. Plaintiffs recovered a judgment in the circuit court. Defendant brings error. Reversed.

The plaintiffs below, Thomas J. Coggin and Robert E. Farris, were partners in the conditional purchase of a lot of horses. Coggin made the contract. He was to pay $1,500 for the horses. He paid $250, and agreed to pay the remaining $1,250 on the 24th day of July, 1892, and, failing to do so, the trade was to be off, and he was to forfeit the $250 he had paid.

On the 18th day of July, 1892, Coggin wrote upon one of the defendant's printed blanks, and delivered to the operator at Okarche, Oklahoma Territory, for transmission to his partner, Farris, at Purcell, in the Indian Territory, a message reading as follows:

"Okarche, O. T., 7–18–1892.
"To R. E. Farris, c/o E. R. Wilson, Purcell, I. T.: Be on hand evening of third. I got early. T. G. Coggin."

Immediately above and preceding the written message on the blank was printed the following: "Send the following message subject to the above terms, which are hereby agreed to." Among the "above terms" were the following:

"The Western Union Telegraph Company.

"All messages taken by this company are subject to the following terms: To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this, one-half the regular rate is charged in addition. It is agreed between the sender of the following message and this company that said company shall not be liable for mistakes or delays in the transmission or delivery of or the nondelivery of any unrepeated message, whether happening by negligence of its servants or otherwise, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery or for nondelivery of any repeated message beyond fifty times the sum received for sending the same, unless specially insured; nor in any case for delays arising from unavoidable interruption in the working of its lines, or for errors in cipher or obscure messages."

The plaintiffs alleged the defendant negligently failed to deliver the message, and by reason thereof Farris failed to pay the $1,250 on the 24th day of July, 1892, whereby the plaintiffs were damaged in the sum of $1,750, being the $250 forfeited and $1,500 claimed as profits for the difference between the price the plaintiffs were to pay for the horses and what they were worth in the market at the time and place the contract therefor was forfeited. The answer denied all negligence; denied that the defendant at the time of sending the message had any knowledge that it related to the purchase of horses or to any other matter of business in respect to which the plaintiff would suffer any loss or damage by a failure to transmit or deliver the message; and pleaded that the message was a nonrepeated message, and therefore, by the contract between the parties under which it was sent, the defendant was not liable for any mistake in sending or delay in delivering the same. The plaintiff Coggin testified that, at the time he delivered the message to the operator, he told him he "wanted Farris to be sure and get this message, as it was a business matter," and he says: "My purpose in sending said message was to summon the said Farris to the town of Wolsey, Indian Territory, and to cause him to bring some money to pay the balance of the purchase money on one hundred head of horses and mules that I had purchased from Henry J. Easterwood for myself and the said Farris."

The complaint alleged the message read "substantially as follows":

"Okarche, Oklahoma Ty., July 18, 1892.
"To Robert E. Farris, c/o S. R. Wilson, Purcell, I. T.: Be on hand the evening of the twenty-third without fail. Thos. J. Coggin."

But the original message was produced, and read as given above.

There were a verdict and judgment for the plaintiff for $350, and the defendant sued out this writ of error.

Cassius M. Ferguson (George H. Fearons, Henry E. Asp, J. W. Shartel, and James R. Cottingham, on the brief), for plaintiff in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

This case was brought and tried before the case of Primrose v. Telegraph Co., 154 U. S. 1, 14 Sup. Ct. 1098, was decided. Since the decision in that case it has been the settled law in the federal courts

—First, that the conditions contained in the stipulation quoted, subject to which the unrepeated message of the plaintiffs was sent, are reasonable and valid; second, that, under these stipulations, the telegraph company is not liable for mistakes in the transmission or delivery, or for the nondelivery, of an unrepeated message beyond the sum received for sending the same; and, third, that where an unrepeated message is in cipher or obscure, and does not on its face inform the telegraph company of the importance or extent of the business transaction to which it relates, and the company is not otherwise advised thereof, the measure of damages for mistakes in its transmission or delivery or. for its nondelivery is the sum paid for sending it.

The decision of the supreme court in the case of Primrose v. Telegraph Co. silences further contention on these questions in the federal courts. The judgment below cannot be supported for two reasons:

(1) It does not appear from the evidence that, if Farris had received the message, he would have understood it, or taken any action on account of it, or that anything that was not done would have been done if the message had been received. Coggin testifies to his object in sending the message; but neither he nor Farris nor any other witness testifies that, if Farris had received the message as sent, he would have known what it meant, or that he would have been prompted to take any action on account of it. It is not shown or claimed that it was a cipher message to which Farris had a key, or that there was any previous agreement or understanding between Coggin and Farris as to what meaning should be attached to a message couched in the terms of this one. On its face it does not have the remotest relation to the purchase of the horses. The date mentioned varies nearly a month from the date on which the purchase of the horses was to be concluded. There is no hint as to the place of meeting, or about money, or the completion of any contract for the purchase of horses, or indeed of anything else. There is no evidence that, if Farris had received the message, he would have known what it meant, and attended at the proper time and place, and paid for the horses, or that he had or could have procured the money to pay for them, or that he would have paid for them if he had had the money and had been fully advised of all the facts. In a word, the message is so blindly written as to be absolutely meaningless to any one not having a key to the thoughts of the sender. Under the evidence, the message conveyed no more information to Farris or to the defendant than if it had been in a cipher known to Coggin alone, or in an unknown tongue. It is clear from the evidence that Coggin himself blundered in writing it, and that he failed to use language to express what he intended and what he thought he had written at the time his complaint was drawn.

(2) There is nothing in the message to advise the defendant what it was about, nor what nor where any damage would result from its nondelivery; and particularly there is nothing from which it can properly and reasonably be said the alleged damages grow-

ing out of the failure to complete the purchase of the horses was in the contemplation of both parties at the time the message was sent. But it is said Coggin told the operator that the message related to "a business matter." The evidence, however, does not show that Farris would have understood it related to a business matter, and particularly not to the purchase of the horses; and the mere statement made to the defendant at the time of sending the message that it related to a business matter conveyed no information to the defendant as to the nature of the business. It amounted to no more than to say, "This is a business, and not a social, message." The nature of the business was not disclosed. Whether it was of much or little moment, and whether it related to business of the past, present, or future, or to business which, if not transacted at a particular time or place, would be attended with pecuniary loss or damage, was not stated; nor was anything said from which such results can be said to have been within the contemplation of the parties. Certainly, it did not give the defendant the faintest idea of the transaction about the horses, and damages on account of that transaction cannot therefore be said to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it.

In Primrose v. Telegraph Co. the court say:

"In Hadley v. Baxendale (decided in 1854) 9 Exch. 345,—ever since considered a leading case on both sides of the Atlantic, and approved and followed by this court in Telegraph Co. v. Hall [8 Sup. Ct. 577], above cited, and in Howard v. Manufacturing Co., 139 U. S. 199, 206, 207, 11 Sup. Ct. 500,—Baron Alderson laid down, as the principles by which the jury ought to be guided in estimating the damages arising out of any breach of contract, the following: 'Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally (i. e. according to the usual course of things) from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract.' 9 Exch. 354, 355."

The rule is stated in slightly different language by the court of appeals of New York in the case of Baldwin v. Telegraph Co., 45 N. Y. 744. The court say:

"Whenever special or extraordinary damages, such as would not naturally or ordinarily follow a breach, have been awarded for the nonperformance of contracts, whether for the sale or carriage of goods, or for the delivery of messages by telegraph, it has been for the reason that the contracts have been made with reference to peculiar circumstances known to both, and the particular loss has been in the contemplation of both, at the time of making the contract, as a contingency that might follow the nonperformance."

The definition of the rule is quoted approvingly by the supreme court in Primrose v. Telegraph Co.; and it is clear that, under the rule established in that case, the damages claimed by the plaintiffs in this case are too remote.

This definition of the rule is quoted approvingly by the supreme court in Primrose v. Telegraph Co.; and it is clear that, under the rule established in that case, the damages claimed by the plaintiffs in this case are too remote.

The judgment of the United States court in the Indian Territory is reversed, and the cause remanded, with instructions to grant a new trial.