## O'Neill & Gyles, Appellees, v. Postal Telegraph-Cable Company, Appellant.

1. TELEGRAPHS AND TELEPHONES, § 29*—*what law governs liability for delay in transmission of interstate telegrams.* All questions relating to liability for damages by reason of delay in transmission of interstate telegrams must be determined under the Federal law.

2. COMMERCE, § 5*—*what is effect of Carmack Amendment to Interstate Commerce Act.* The Carmack Amendment to the Interstate Commerce Act supersedes all the regulations and policies of the States on subjects covered by it.

3. TELEGRAPHS AND TELEPHONES, § 24*—*what is extent of liability for delay in delivery of cipher message.* Where an interstate telegraph message is in cipher and unintelligible and the telegraph company is not informed of the nature, importance or extent of the transaction to which it relates, the damages for delay in delivery are, where a stipulation on the back of the blank so provides, limited to the amount paid by the sender for its transmission, and if he

* See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

38    APPELLATE COURTS OF ILLINOIS.

O'Neill & Gyles v. Postal Telegraph-Cable Co., 201 Ill. App. 37.

has paid nothing, as where the message has been sent "collect," he can recover nothing.

4. TELEGRAPHS AND TELEPHONES, § 27*—*when sender of interstate message bound by terms on blanks limiting liability.* A sender of an interstate telegraph message is bound by the terms relating to the company's liability for delay, printed upon the back of the blank on which he writes the message, whether he knows of them or not.

Appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the April term, 1915. Reversed with finding of fact. Opinion filed October 13, 1915. Rehearing denied December 11, 1915.

O'CONNELL & DOLAN, for appellant.

THOMAS S. WELDON and DE MANGE, GILLESPIE and DE MANGE, for appellees.

MR. JUSTICE GRAVES delivered the opinion of the court.

Appellees were grain brokers at Bloomington, Illinois. They bought grain in carload lots from local dealers and shipped the same to and sold the same at various large cities, among which was Cincinnati, Ohio. Much of their business was conducted by telegraph. Some of the messages were in cipher and were unintelligible. Appellant is a telegraph company engaged in the business of transmitting for hire messages for its patrons from one of its offices to another located in the same and different States.

On May 28, 1912, at 8:45 a. m., appellees filed in the offices of appellant in Bloomington to be sent collect to Cincinnati, Ohio, the following message:

"To Allen & Munson,
                    Cincinnati, Ohio.
          Bought absolute acutely dampness.
                              O'Neill & Gyles."

On the face of the blank on which this telegram was written there was printed the following:

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

"The Postal Telegraph-Cable Company (incorporated transmits and delivers this message subject to the terms and conditions printed on the back of this blank. * * * SEND the following telegram subject to the terms on the back hereof, which are hereby agreed to."

On the back of the blank is printed the following:

"The Postal Telegraph-Cable Company
(Incorporated)
transmits and delivers the within
telegram subject to the following
Terms and conditions:

"To guard against mistakes or delays, the sender of a telegram should order it repeated; that is, telegraphed back to the originating office for comparison. For this, one-half of the unrepeated telegram rate is charged in addition, unless otherwise indicated on its face THIS IS AN UNREPEATED TELEGRAM AND PAID FOR AS SUCH, in consideration whereof, it is agreed between the sender of the telegram and this company as follows:

"1. The Company shall not be liable for mistakes or delays in the transmission or delivery, or for non-delivery, of any unrepeated telegram, beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery, or for non-delivery, of any REPEATED telegram, beyond fifty times the sum received for sending the same, UNLESS SPECIALLY VALUED; nor in any case for delays arising from unavoidable interruption in the working of its lines; NOR FOR ERRORS IN CIPHER OR OBSCURE TELEGRAMS.

"2. In any event the Company shall not be liable for damages for any mistakes or delays in the transmission or delivery, or for non-delivery of this telegram, whether caused by the negligence of its servants or otherwise, beyond fifty times the REPEATED TELEGRAM rate, at which amount this telegram, if sent as a repeated telegram, is hereby valued, unless a greater value is stated in writing hereon at the time the telegram is offered to the Company for transmission, and an additional sum paid or agreed to be paid based on such value equal to one-tenth of one per cent. thereof.

"3. The Company is hereby made the agent of the sender, without liability, to forward this telegram over the lines of any other Company when necessary to reach its destination.

"4. Messages will be delivered free within the established free delivery limits of the terminal office. For delivery at a greater distance a special charge will be made to cover the cost of such delivery.

"5. No responsibility regarding messages attaches to this Company until the same are presented and accepted at one of its transmitting offices; and if any message is sent to such office by one of this Company's messengers, he acts as the agent for the sender for the purpose of delivering the message and any notice or instructions regarding it to the Company's agent in its said office.

"6. The Company shall not be liable for damages or statutory penalties in any case where the claim is not presented in writing within sixty days after the telegram is filed with the Company for transmission.

"7. The above terms and conditions shall be binding upon the receiver as well as the sender of this telegram.

"8. No EMPLOYEE OF THIS COMPANY IS AUTHORIZED TO VARY THE FOREGOING.

CLARENCE B. MACKAY, President.

"CHARLES C. ADAMS,      EDWARD REYNOLDS,
Vice-Pres't.      Vice-Pres't and Gen'l. Mgr.
     CHARLES P. BRUCH,
     Vice-Pres't."

The message was an unrepeated message sent at the rate charged for unrepeated messages, the charge therefor to be collected at Cincinnati, Ohio, and was in cipher and wholly unintelligible without the key to the cipher, and it does not appear that appellant was informed of its contents, importance or nature, or of the amount of the transaction.

It is contended that the message was unduly delayed and that appellees suffered a loss of $175, in consequence of such delay.

A judgment of $175 against the telegraph company was obtained in the Circuit Court.

In the view we take of the case it may be conceded that the message was unduly delayed and that appellees were damaged to the amount of the judgment. Yet that judgment must be reversed for other reasons.

The message sent was an interstate message, and comes within the provisions of the Act of Congress known as the Carmack Amendment to the Hepburn Act. Section 1 of that Act as thus amended provides: "That the provisions of this act shall apply to   *   *   * telegraph, telephone and cable companies   *   *   * engaged in sending messages from one State, territory or district of the United States to any other State, territory or district of the United States, or to any foreign country, who shall be considered and held to be common carriers within the meaning and purposes of this act   *   *   *. All charges made for any services rendered or to be rendered   *   *   *   for the transportation of messages by telegraph   *   *   *   or in connection therewith shall be just and reasonable   *   *   *. Provided that messages by telegraph   *   *   *   subject to the provisions of this act, may be classified into day, night, repeated, unrepeated, letter commercial, press, government and such other classes as are just and reasonable and different rates may be charged for the different classes of messages."

All questions relating to liability for damages by reason of delay in transmission of interstate telegrams must be determined under the Federal law. *Western Union Tel. Co. v. Bilisoly,* 116 Va. 562, 82 S. E. 91; *Western Union Tel. Co. v. First Nat. Bank of Berryville,* 116 Va. 1009, 83 S. E. 424; *Williams v. Western Union Tel. Co.,* 203 Fed. 140. The Carmack Amendment supersedes all the regulations and policies of the State on subjects covered by it. *Adams Exp. Co. v. Croninger,* 226 U. S. 491; *Gamble-Robinson Com-*

*mission Co. v. Union Pac. R. Co.*, 262 Ill. 400; *Staley v. Illinois Cent. R. Co.*, 268 Ill. 356.

Where, as in this case, the message is in cipher and is unintelligible and the telegraph company is not informed of the nature, importance or extent of the transaction to which it relates, the damages for delay are limited by the Federal law to the amount paid by the plaintiff for sending it. *Primrose v. Western Union Tel. Co.*, 154 U. S. 1; *Postal Co. v. Nichols*, 159 Fed. 643; *Western Union Tel. Co. v. Coggin*, 15 C. C. A. 231, 68 Fed. 137.

Appellees in the case at bar paid nothing for sending the message in question, and therefore under the rule announced can recover nothing.

In view of what has been said, it seems unnecessary to determine whether the sender of this message was aware of the stipulation and conditions printed on the face and back of the blank on which he wrote this message or whether appellees were bound by those stipulations, whether he actually knew what they were or not.

It is perhaps enough to say of the first question that appellee who wrote this message was himself a telegraph operator and had during the seven months next preceding the sending of this message sent several thousand messages written on the same kind of blanks, and while it might be true that he did not know what the stipulations and conditions thereon were, if he did not, he certainly was lacking in ordinary observation.

As to whether he would be bound by those conditions and stipulations if he was in truth ignorant of them, the holdings of our State courts are in conflict with the decisions of the United States courts. Our courts hold that he would not be. *Webbe v. Western Union Tel. Co.*, 169 Ill. 610; *Tyler, Ullman & Co. v. Western Union Tel. Co.*, 60 Ill. 424; *Beggs v. Postal Tel.-Cable Co.*, 258 Ill. 238 [5 N. C. C. A. 650], and that

is undoubtedly the law as to intrastate messages. But the Federal courts take the opposite view, and hold that the sender of a message is bound by the conditions and stipulations printed on the blank on which he writes the message whether he actually knows what they were or not. *Primrose v. Western Union Tel. Co.,* 154 U. S. 1; *Beasley v. Western Union Tel. Co.,* 39 Fed. 181; *Postal Tel.-Cable Co. v. Nichols,* 89 C. C. A. 585, 159 Fed. 643. See also *Adams Exp. Co. v. Croninger,* 226 U. S. 491.

Under the rule that the Federal law governs as to interstate messages, it would seem that appellees were bound by the conditions printed on the blank used in sending this message. One of those stipulations expressly provides that the company will not be liable for mistakes or delays in sending of any unrepeated messages beyond the amount received for sending the same.

The judgment of the Circuit Court is reversed with a finding of fact to be incorporated in the judgment of this court that appellees paid nothing for sending the message, the delay in the delivery of which is made the basis of this suit.

*Reversed with finding of fact.*