## WESTERN UNION TELEGRAPH CO., Inc., v. HALL.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1923.)

### No. 2012.

1. **Telegraphs and telephones ☞67(1)—Liability for nondelivery of telegram restricted to losses reasonably anticipated.**

In an action for nondelivery of a telegram, liability for negligence, not wanton, willful, or malicious, is restricted to compensation for such losses and injuries as should reasonably have been foreseen by an ordinarily prudent person as the natural and probable consequence of such negligence, in the light of the attending circumstances.

2. **Telegraphs and telephones ☞70(1)—Failure to deliver message transmitting money renders company liable for cost of transmission and interest on money.**

A telegraph company, failing to deliver a message transmitting money, is liable for the fee paid for transmitting the message and for interest on the money deposited for transmission, until repaid.

3. **Telegraphs and telephones ☞68(1)—Damages for mental suffering alone, or accompanied by pecuniary loss, not recoverable for failure to deliver message transmitting money.**

Damages for mental anguish, either alone or accompanied by pecuniary loss, by reason of nondelivery of telegram transmitting funds, is not recoverable in the federal courts.

4. **Telegraphs and telephones ☞73(1)—Whether telegram was notice to company of indirect and consequential damage held a jury question.**

Whether a telegram transmitting money to plaintiff, addressed to defendant at Union Station in Kansas City, was notice to the telegraph company that failure to deliver such message would result in indirect and consequential injury to the addressee, *held* a question for the jury.

5. **Trial ☞142—Undisputed fact from which different inferences may reasonably be drawn, presents jury question.**

Where impartial and intelligent men can reasonably draw different inferences from an undisputed fact, a jury question is presented.

6. **Principal and agent ☞178(1)—Notice to agent not connected with transaction not notice to principal.**

Notice to an agent, who is under no duty to transmit the information to his principal or to other agents, and who has no connection with the transaction to which the notice relates, is not notice to the principal.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. **Telegraphs and telephones ⬥⇒67(2)—Telegram requesting funds not notice to company justifying recovery of special damages for nondelivery of message transmitting funds.**

In an action for nondelivery of a money transfer message in which plaintiff sought recovery for hardships and suffering undergone by him in making his way home on railroad train without paying fare, *held*, that his telegraphic request for funds did not put the defendant telegraph company on notice, so as to authorize the recovery of special damages suffered.

8. **Trial ⬥⇒191(6)—Instructions assuming notice to telegraph company of consequential damages error.**

In an action for nondelivery of telegram, instructions assuming that the defendant had been put on notice, by plaintiff's telegram requesting funds, that he was without funds, and that the purpose of a money transfer message in answer thereto was to supply him with funds indispensably necessary to procure his transportation home, was prejudicial error, as not submitting to the jury for determination the question whether the defendant had notice, rendering it liable for consequential damages.

9. **Appeal and error ⬥⇒215(1)—Failure to object to instructions precludes review.**

Where no exception was taken to the charge, error therein is not ground for reversal, nor can the trial court's refusal to set aside the verdict, and its failure to require remission of a greater part of the verdict than as ordered, be reviewed.

10. **Appeal and error ⬥⇒1050(1)—Telegraphs and telephones ⬥⇒66(3), 67(5)— Damages for hardships incurred by plaintiff in beating his way not recoverable in action for failure to deliver message transmitting funds, and admission of evidence thereof is prejudicial error.**

Damages suffered by a traveler for failure to deliver to him a telegram transmitting funds, by reason of his attempting to make his way home by stealing rides on railroad trains, are not recoverable as the natural and probable result of failure to receive funds transmitted, and evidence of inconvenience, suffering, and hardship undergone by plaintiff in making his way home is inadmissible, and the admission of such testimony to show that plaintiff minimized losses and injuries suffered at defendant's hands was prejudicial.

11. **Telegraphs and telephones ⬥⇒74(5)—Failure to properly instruct on consequential damages reversible error.**

Refusal to instruct the jury that plaintiff is not entitled to recover from a telegraph company any damages for inconvenience or injuries incurred in his effort to get home on railroad trains without paying his fare, as the result of nondelivery of a money telegram, *held* reversible error.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Action at law for damages by George M. Hall against the Western Union Telegraph Company, Incorporated. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

The plaintiff, in error was the defendant, and the defendant in error was the plaintiff, below, and they will be so referred to herein. This was an action of tort to recover damages laid at $5,000, which arose as follows:

The plaintiff, after serving as an enlisted man in the Navy, was honorably discharged at Mare's Island, Cal., about August 28, 1921, equipped with new clothes, and with ample funds to pay the expenses of the journey to his home in Baltimore. On his way home he stopped in Salt Lake City, and also in Denver, for some time, and again he stopped in Kansas City, Mo., to visit friends. He stayed there until his funds were so far

exhausted that he had only about $10 left. On the morning of September 19, 1921, he delivered to one of the numerous agents of the defendant at the office of the company at the Union Station in Kansas City the following telegram:

"1921 Sep 19 a. m. 11:16.

"U. D. Kansas City Mo 941 A 19 Miss Annie D. Shoemack Maryland Casualty Bldg., Baltimore, Md. Wire me fifty dollars for fare care Western Union Co. Union Station Kansas City. Answer quick.                    George."

Miss Shoemack, a clerk in the office of the Maryland Casualty Company, was the plaintiff's aunt. She says she received the foregoing telegram about noon of the day it was sent. That evening, about 7 o'clock, having only about $42 available, she deposited at the Charles Street office of the telegraph company in Baltimore the sum of $40 and paid $1.42 for sending a money transfer telegram reading, so far as is material:

"Sept. 19, 1921.

"Pay to Geo. Hall c/o Western Union Co., Union Station, Kansas City, Mo., forty dollars."

This message was never delivered to the plaintiff. He called at the office of the telegraph company at the Union Station in Kansas City about every two hours during the late afternoon and evening of the 19th, and during the next day. On the 20th he had a telephone inquiry made at the central office of the Western Union Company in Kansas City, but the answer was that nothing had come for him. The next morning about 10 o'clock plaintiff sent to his mother in Baltimore a telegram reading:

"Need fifty dollars to get home. Wire Western Union, Union Station."

The plaintiff said he had not previously telegraphed his mother, as he did not wish to worry her. Later, on the 20th, no answer having been received either from his aunt or his mother, the plaintiff telegraphed two of his former shipmates at Los Angeles, Cal., asking for money. They answered in effect that they were without means, and advised him to try the recruiting office. On receipt of that telegram the plaintiff did go to the recruiting office in Kansas City, but was unable to obtain assistance there. On the next day the plaintiff again telegraphed his mother, asking if she had received his message, but no reply was received to this telegram. The plaintiff then attempted to secure employment in Kansas City, but, finding a great number of applicants ahead of him, he abandoned efforts in that direction. By that time his money was so nearly exhausted that he did not have enough to pay for another telegram. At one of the uptown offices of the defendant in Kansas City he inquired if he could send a message collect, but met with a refusal. He then made the same effort at the Union Station office of the defendant, but was told there that it was against the rules to send a message collect, unless the sender was identified as being responsible. After the foregoing efforts the plaintiff decided to make his way to Baltimore by riding on railroad trains without paying fare. The plaintiff's numerous disagreeable experiences in thus making his way from Kansas City to Baltimore may be summarized by saying that he was repeatedly ejected from trains; he was chased by railroad detectives, searched by the police, and subjected to great discomfort by riding on platforms and tenders; dogs were set on him; once he was shot at by a farmer, and his clothing was ruined in escaping arrest. The plaintiff was repeatedly searched, and it was due only to his honorable discharge from the navy that he escaped imprisonment. He was eight days on the journey, and during that time he suffered occasionally from hunger.

It appears that Miss Shoemack did not tell the plaintiff's mother of the telegram she had received, in order that his mother might have a pleasant surprise on the arrival of her son, and when on the 20th of September the plaintiff's mother showed Miss Shoemack the telegram she had had from plaintiff, requesting money, Miss Shoemack explained that she had already sent the plaintiff the money he needed, and said that it would be unnecessary for the mother to make any reply to plaintiff's telegram. On Wednesday night, when Miss Shoemack came home, she found that the

plaintiff's second telegram to his mother had been received, and strangely enough concluded that the plaintiff had received the money from her, and was telegraphing for more money. But this conclusion for some reason led to no result, other than a belated telegram of inquiry which reached Kansas City after the plaintiff had left there. It was not until the 23d that Miss Shoemack learned that her message of the 19th had not been delivered to the plaintiff in Kansas City. On this date the $40 deposit was returned to her.

The explanation given by the only witness introduced by the defendant of the failure to deliver the money transfer message from Miss Shoemack is that the employee of the company in Baltimore who undertook to send the message omitted to address it to the Union Station. There was no explanation offered of the reason why plaintiff's inquiry for a telegram for him, made by telephone at the central office of the telegraph company in Kansas City, was fruitless. The witness suggested as a possibility that the message had been improperly filed. During the eight days of the plaintiff's journey he did not communicate with any of his family.

The trial resulted in a verdict of $900 for the plaintiff. On motion to set it aside the court required the plaintiff to remit $500 thereof, and judgment was entered for $400 and costs.

W. Irvine Cross and Eben J. D. Cross, both of Baltimore, Md. (Joseph L. Egan and Francis R. Stark, both of New York City, on the brief), for plaintiff in error.

Webster C. Tall, of Baltimore, Md. (E. M. Sturtevant, of Baltimore, Md., on the brief), for defendant in error.

Before KNAPP and WADDILL, Circuit Judges, and McDOWELL, District Judge.

McDOWELL, District Judge (after stating the facts as above). [1] In telegraph cases, as in other negligence cases, liability for negligence (which is not wanton, willful, or malicious) is confined to compensation for such losses and other injuries as should reasonably have been foreseen by an ordinarily prudent person as the natural and probable consequence of such negligence in the light of the attending circumstances. In Milwaukee, etc., R. Co. v. Kellogg, 94 U. S. 469, 475 (24 L. Ed. 256), it is said:

"But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

But in telegraph cases, because of the meagerness of the information usually given to the agents of the telegraph company, questions of notice of facts making special damages recoverable are very frequently of great nicety, and have led to much contrariety of opinion. Where a telegram offered for transmission is in cipher and wholly unintelligible to the agents of the telegraph company, it of itself does not put the telegraph company on notice that a failure to deliver such message will probably be followed by any loss or injury, other than the amount of the fee paid for the transmission of the message. See Primrose v. Western Union Telegraph, 154 U. S. 1, 29, 14 Sup. Ct. 1098, 1106 (38 L. Ed. 883). This was an action in tort, in which, as one of two reasons for confining the recovery to the amount paid for

the transmission of an incorrectly transmitted cipher message, the court said:

"Beyond this, under any contract to transmit a message by telegraph, as under any other contract, the damages for a breach must be limited to those which may be fairly considered as arising according to the usual course of things from the breach of the very contract in question, or which both parties must reasonably have understood and contemplated, when making the contract, as likely to result from its breach. This was directly adjudged in Western Union Tel. Co. v. Hall, 124 U. S. 444."

[2] In the case at bar the defendant negligently failed to deliver to the plaintiff Miss Shoemack's money transfer message. Miss Shoemack acted as the plaintiff's agent in attempting to send this message. Two items of pecuniary loss were not only the probable, but the direct and inevitable, results of the failure to deliver the message. These were (1) the charge made for the message; and (2) interest on the money deposited with the telegraph company from the day it was deposited until the date of its return. Under the evidence the plaintiff had, as a matter of law, a right to recover at least these small sums.

Whether or not the defendant is liable for other indirect, consequential, injuries or losses depends on a question of notice. If the defendant had been put on notice of circumstances such as would reasonably have led an ordinarily prudent person to anticipate such losses or injuries as a natural and probable consequence of a failure to deliver the money transfer message, such liability may exist; and in this connection it seems advisable to consider first the effect of the money transfer message in and of itself, and without reference to any other fact disclosed by the evidence.

[3] At least in cases where the amount of money intended to be transferred is sufficient to indicate that the transfer is intended to serve some serious purpose, it may well be that the message on its face gives notice that a failure to deliver the message will probably cause some degree or form of mental anguish, if only anxiety or embarrassment. But we are of opinion that such effect, if any, should in this case be wholly disregarded. It is true that the defendant here suffered some degree of mental anguish, and that he also suffered some pecuniary loss, as a consequence of the defendant's negligence. However, in the federal courts compensation may not be recovered for mental suffering alone, or for such suffering accompanied by pecuniary loss alone. See Kester v. Western Union Tel. Co. (C. C.) 55 Fed. 603, 604; Rowan v. Western Union Tel. Co. (C. C.) 149 Fed. 550, 552, 553, 49 L. R. A. (N. S.) 249; Western Union Tel. Co. v. Wood, 57 Fed. 471, 478, 6 C. C. A. 432, 21 L. R. A. 706; Crawson v. Western Union Tel. Co. (C. C.) 47 Fed. 544, 546; Alexander v. Western Union Tel. Co. (C. C.) 126 Fed. 445; Pennsylvania Co. v. White, 242 Fed. 437, 439, 155 C. C. A. 213; Western Union Tel. Co. v. Chouteau, 28 Okl. 664, 115 Pac. 879, 49 L. R. A. (N. S.) 206. See dictum in Wilcox v. Richmond, etc., R. Co., 52 Fed. 264, 266, 267, 3 C. C. A. 73, 17 L. R. A. 804 (C. C. A. 4), to the contrary.

Aside from those jurisdictions in which mental anguish without other injury of any sort is held to be ground for a recovery of compensa-

tory damages, there are some jurisdictions in which it is held that compensatory damages may be recovered for mental anguish, *if accompanied by pecuniary loss*. But these rulings can find no support in principle. The fundamental reason for refusing compensatory damages for mental suffering, unaccompanied by physical injury and physical suffering, is that mental suffering in and of itself is of too uncertain a nature to afford a reasonable basis for the ascertainment of compensation. Southern Express Co. v. Byers, 240 U. S. 612, 615, 36 Sup. Ct. 410, 60 L. Ed. 825, L. R. A. 1917A, 197. Where the defendant's wrong causes physical bodily hurt, which in turn causes both physical pain and mental anguish, the latter element is of necessity considered in computing compensatory damages. But where the injury (in compensatory cases) causes mental anguish and pecuniary loss, the objection to any effort to estimate proper compensation for the element of mental anguish is exactly as forcible as it is in cases where there is mental anguish only. As the plaintiff here suffered no bodily injury as a proximate result of the defendant's negligence, the notice (if any) given solely by the face of the money transfer message that some degree of mental anguish would probably result from failure to deliver the message does not avail the plaintiff.

Recurring, now, to the effect of Miss Shoemack's money transfer message per se as notice that a failure to deliver the message would probably result in indirect consequential injury, other than mental anguish, we have for consideration the proper inference to be drawn from a single item of circumstantial evidence. Arguments of more or less force may be advanced respecting Miss Shoemack's message leading to either of two inferences, and it seems impossible to say that either is so indisputably sound that no two intelligent and impartial men could disagree. To some persons the bare fact that an attempt is being made to transfer money by telegraph implies such urgency as to clearly suggest that indirect consequential losses and injuries (other than mental anguish) will be the natural and probable result of a failure to deliver the message. And in the case before us we are not prepared to hold that it would be entirely unreasonable to say that the message on its face would have led an ordinarily prudent person to anticipate loss of time and expenditure of money as the natural and probable result of a failure to deliver the message. As has been said, the sum intended to be transferred was of sufficient amount to suggest that the money was needed for some serious purpose. And the bare fact that the telegraph was used implied a desire, if not a need, for haste. The fact that the address of the payee was at the Union Station is also of some importance. It had at least a slight tendency to suggest that the payee was a stranger in the city to which the message was to have been sent. Doubtless money transfer messages are occasionally sent to persons employed at railway passenger stations in the larger cities, and doubtless such messages may be sent to passenger stations in the large cities for "commuters" who are not strangers. But such cases must be less frequent, probably much less frequent, than cases where the addressee is a transient and hence probably a stranger.

On the other hand, it is also not unreasonable to say that the mere face of the tranfer message in this case would not have led an ordinarily prudent man to anticipate as the probable result of a failure to deliver the message any indirect injury, other than some degree of mental anguish. The message on its face gives no intimation as to even the person who desired the transfer to be made. It could have been the sender, the addressee, or some third person. Likewise the object in view in transmitting the money is in no way suggested. Doubtless money is often transmitted by telegraph, without necessity for speed, and merely to give pleasure to the addressee, or to gratify a whim or a punctilio of the sender. And again, in countless instances, when the transfer of money by telegraph is attempted because of a reason of importance, the result of a failure to deliver the message is nothing more than temporary annoyance. The needed funds can be and are quickly supplied from other sources.

[4, 5] On the whole, we think that the effect of Miss Shoemack's transfer message in and of itself as giving notice raised a question for the jury. It is not a sufficient reason for treating such a question as we have here as one of law that there is no conflict of testimony. Where two impartial and intelligent men could reasonably draw different inferences from an undisputed fact, a question for the jury is presented. Richmond & Danville Railroad v. Powers, 149 U. S. 43, 45, 13 Sup. Ct. 748, 37 L. Ed. 642.

We must now consider the remaining circumstances. It will be observed that the acts of negligence on the part of the defendant in the case at bar were: (1) The failure of the telegrapher, at the office of the defendant in Baltimore, who undertook to transmit Miss Shoemack's money transfer message, to show thereon that the message was to be delivered at the Union Station in Kansas City; and (2) the improper filing in the main office of the defendant in Kansas City of the money transfer message, or the failure to find it, if it had been properly filed.

It is not contended that Miss Shoemack made any oral communication to the clerk who accepted her money transfer message which could possibly have served to give notice of any fact making special damages recoverable. We shall therefore next discuss the effect of the plaintiff's first telegram as notice of a probability of special injury.

[6] Without expressing any opinion whatever on the question, we shall assume for present purposes that the plaintiff's first telegram gave to every employee of the defendant whose duty it was to read that message sufficient notice of plaintiff's situation. But there was no failure of duty in respect to the plaintiff's message to Miss Shoemack. There was no evidence tending to show, and no contention has been made, that the agent in Baltimore who undertook to transmit Miss Shoemack's message (after 7 in the evening) had had any connection with, or any knowledge of, the message from the plaintiff (which reached Baltimore before noon). There is also no pretense that any of the defendant's employees at its main office in Kansas City had any knowledge whatever of the plaintiff's situation. Notice to an agent, who is under no duty to transmit the information to his principal, or

to any other agent, and who has no connection with the transaction to which the notice relates, is not notice to the principal. This, is, we think, beyond doubt a correct statement of the general rule in regard to giving notice to a principal through an agent. In 4 Thompson on Corporations, § 5175, it is said:

"These questions answer themselves, and show that the true rule is that the agent to whom the notice is communicated (1) must have been an agent at the time; the communication must not have been made before his agency had commenced, or after it had expired; (2) that it must have been made to an agent of such a character that the matter to which it related was within the scope of his agency, that is to say, that it was within his power and duty either (a) to act for the principal upon the subject of the notice, or (b) to communicate the information either to the principal or to the agent whose duty it was to act for him with regard to it."

See, also, Wade on Notice (2d Ed.) § 674; 14a Corpus Juris, p. 482, § 2350; Mechem Agency, §§ 725, 729; Congar v. Chicago, etc., R. Co., 24 Wis. 157, 1 Am. Rep. 164; Shearman and Redfield on Negligence (3d Ed.) § 605; Pope v. Western Union Tel. Co., 14 Ill. App. 531; Western Union Tel. Co. v. Weniski, 84 Ark. 457, 106 S. W. 486, 488; Taggart v. Western Union Tel. Co., 198 App. Div. 366, 190 N. Y. Supp. 450, 452. See, contra, 3 Sutherland, Damages (6th Ed.) § 971, p. 3607.

[7] In the case before us it seems to us unreasonable to say that the employees of the defendant who read the plaintiff's message to Miss Shoemack were under the duty of communicating the knowledge assumed to have been thus given them to either the directors of the defendant company or to the employees who might be concerned with such answer to plaintiff's message as might (or might not) thereafter be offered for transmission. The evidence shows that the defendant has more than one office in Baltimore, as well as in Kansas City. And it is a matter of common knowledge that in the larger cities requests for money, as well as other messages indicating that the response will be of serious importance, are frequent. If the employees of the Western Union Telegraph Company in large cities, who receive some intimation of the urgency of the situation of a person who requests a transfer of money, were to attempt to give notice to every officer or employee of the company who might be concerned in a possible telegraphic response to such request, the very number of such attempted notifications would defeat the purpose thereof. In telegraph offices where very few agents are employed a different rule may apply. But in the case before us we must hold that the plaintiff's first telegram did not put the defendant on notice such as to authorize a recovery of special damages. And we see no hardship in such result. In almost every case that can arise, error and consequent delay in delivery, or failure to deliver, can be avoided at reasonable cost by having the message repeated to the sender. It is true that at the time the plaintiff sent his first telegram he told the employee at the Union Station who took it that he was a stranger in Kansas City. But as no employee at the Union Station had any connection whatsoever with

the undelivered money transfer message, the defendant was not thus charged with notice of this fact.

We do not discuss the telegrams sent by the plaintiff to his mother and to his friends in Los Angeles for the same reason. There is no contention that any employee who saw any one of these telegrams had any connection with the money transfer message.

The charge of the trial judge did not give the jury to understand that they had to decide whether or not the defendant had been put on notice of circumstances such as would reasonably have led an ordinarily prudent person to foresee any indirect consequential injuries as a probable result of a failure to deliver Miss Shoemack's money transfer message. On the other hand, the charge erroneously assumes that the defendant had been put on notice (by the plaintiff's first telegram) that the plaintiff was a stranger in Kansas City, that he was without funds, that his home was in Baltimore, and that the purpose of the money transfer message was to supply the plaintiff with money indispensably necessary to procure transportation to Baltimore.

[8, 9] Again, the verdict, even as reduced by the trial judge, gives indubitable evidence that the jury allowed improper damages. But, as surprising as the fact may be, no exception to the charge was saved. Therefore no error therein can justify reversing the judgment below. Nor can the action of the trial judge on the motion to set aside the verdict be reviewed by this court, and therefore the failure of the court to require a remission of more than $500 is not of itself open to our consideration.

[10] However, over the objections and exceptions of the defendant, the trial court permitted testimony by the plaintiff giving a full account of his trials and tribulations after leaving Kansas City, and while making his way home. , This testimony was admitted under the theory that the plaintiff had a right to show that he had minimized the losses and injuries resulting from the defendant's negligence. But we are of the opinion that the facts proved have no tendency to minimize any injuries for which the defendant is liable in any event, and the evidence in question was highly prejudicial to the defendant.

[11] Moreover, the defendant offered, and the court rejected, inter alia, the following prayer:

"The defendant prays the court to instruct the jury that, should they find for plaintiff, they cannot allow the plaintiff any damages for any inconvenience he may have been put to or injuries he may have incurred in the effort to get home on railroad trains without paying his fare, as the result of his not receiving the money sent to him."

We think this prayer should have been granted. Even if the question of the defendant's liability for any special damages whatever had been left to the jury and decided in the affirmative, still it seems to us that there is no possible ground for holding that the defendant had been put on notice that a failure to deliver the money transfer message would naturally and probably result in an effort by the plaintiff to reach Baltimore in the way that he did. As has been shown, the only notice affecting the defendant is such as was given by the face of the money transfer message. Assuming that it put the defendant on no-

tice that some loss of time and expense would be the probable result of a failure to deliver the message, still it could not in reason have put the defendant on notice that (1) the addressee lived in Baltimore; (2) that he was a traveler on the way to his home; (3) that the credit was needed for his fare to his home; (4) that a series of misunderstandings, so unusual as to be almost unbelievable, would prevent other relief from reaching him; or (5) that in these days of Travelers' Aid Societies, Associated Charity Societies, Young Men's Christian Associations, Salvation Army detachments, and other similar organizations, any one to whom credit for $40 was intended to be transmitted would undertake to make his way from Kansas City to Baltimore as a trespasser on railroad trains. See Churches v. Western Union Tel. Co., 108 Kan. 431, 195 Pac. 610; Smith v. Western Union Tel. Co., 150 Pa. 561, 24 Atl. 1049; Stansell v. Western Union Tel. Co. (C. C.) 107 Fed. 668; Smith v. Western Union Tel. Co., 83 Ky. 104, 4 Am. St. Rep. 126, 133; Baldwin v. U. S. Tel. Co., 45 N. Y. 744, 6 Am. Rep. 165, 169; Mackay v. Western Union Tel. Co., 16 Nev. 222, 228; U. S. Tel. Co. v. Gildersleve, 29 Md. 232, 96 Am. Dec. 519; Beaupré v. Pacific & A. Tel. Co., 21 Minn. 155; Western Union Tel. Co. v. Coggin, 68 Fed. 137, 15 C. C. A. 231; Behm v. Western Union Tel. Co., Fed. Cas. No. 1,234.

It follows that the judgment below must be reversed, at the cost of the defendant in error, and this cause remanded for such further proceedings as may be necessary and proper.

Reversed.